**Richard J. SCHUSTER, individually and on behalf of all other members of the press similarly situated, Plaintiff,**

v.

**District Judge Grant L. BOWEN of the Second Judicial District Court of the State of Nevada, Defendant.**

**Civ. No. R–2421.**

United States District Court,
D. Nevada.

Sept. 6, 1972.

Jerry Carr Whitehead, of Breen, Young, Whitehead & Hoy, Chartered, Reno, Nev., for plaintiff.

John C. Bartlett, of Vargas, Bartlett & Dixon, Reno, Nev., for defendant.

## OPINION AND DECISION

BRUCE R. THOMPSON, District Judge.

Respondent, District Judge Grant L. Bowen, is one of Nevada's ablest and most experienced trial judges. He presided over the original trial of State v. Thomas Lee Bean, which resulted in the conviction of defendant for first degree murder and imposition of the death penalty. The conviction and sentence were affirmed on appeal. Bean v. State, 81 Nev. 25, 398 P.2d 251 (1965). The crime was a particularly horrible and atrocious one which aroused wide-spread public interest and indignation.

In post-conviction proceedings, the Supreme Court of Nevada decided that the penalty determination should be retried before another jury [Bean v. State, 86 Nev. 80, 465 P.2d 133 (1970)], a widely publicized and controversial decision which generated much public criticism and dissension, including, for examples, the citation of the Washoe County District Attorney for contempt of the Supreme Court on account of his intemperate comments and the circulation of petitions to recall the three Supreme Court Justices who had supported the ruling.[1]

In the midst of the controversy, Judge Bowen presided over the new penalty trial in November of 1970. After the jury was selected and on the joint motion of the District Attorney and the Public Defender, the Court entered an order "that the names of the jurors and the alternate jurors not be published, and that no further reference be made to any individual juror in this particular case." The press complied with the order but unsuccessfully sought relief therefrom by petition to Judge Bowen for reconsideration, by petition to the Supreme Court of Nevada, and by institution of this action for injunctive and declaratory relief.

Two catch phrases from the numerous precedents enforcing First Amendment guarantees of freedom of speech and of press are hallmarks of plaintiff's argument that the order precluding publication of the jurors' names is obviously unconstitutional and void. These are "prior restraint" and "clear and present danger." We conclude that neither of these touchstones of First Amendment liberties is applicable in this case.

 The Court prohibited publication. Is this not an obvious prior restraint? The answer is "No." What seems to be an obvious conclusion is an illusion resulting from the failure to distinguish between the legislative (regulatory) and judicial functions of a court. While deciding specific issues in cases and controversies and formulating remedies for misconduct, a Court acts judicially. In prescribing rules and standards of conduct for the management of the Court and its business, it is exercising essentially a legislative power. For instance, see Rule 53 of the Federal Rules of Criminal Procedure prohibiting the photographing and broadcasting of court proceedings. From the fact that the sanction for violation of such a rule is contempt rather than a fine or imprisonment fixed by the Legislature, it does not follow that the court order, rule or regulation is any more of a prior restraint than if the prohibition had been declared by legislative act.

In order, then, properly to judge the validity of Judge Bowen's order, we should postulate that the Nevada Legislature had passed a statute or the Nevada Supreme Court had promulgated a rule prohibiting publication of the names of jurors in all criminal cases until after the jury had been discharged. Would such a rule or order be constitutional? I think so, and it follows that the special order of Judge Bowen in a particular case because of the exigencies of that case suffers from no constitutional infirmity.

---

1. The facts stated in the first two paragraphs of this Opinion are either of public record or are common knowledge in the community of Washoe County, Nevada, of which this Court takes judicial notice.

It will add nothing to the professional literature for me to review and comment on the legion of First Amendment precedents cited by counsel and others studied by the Court. Suffice it to say that none of them states the doctrines of no prior restraint and the need for proof of a clear and present danger to the administration of justice as absolutes. All recognize the exceptional case. This is that case. The Sixth Amendment guaranty of a speedy and public trial by an impartial jury is of some importance. In most instances, it will give way to the First Amendment. See, for recent examples, Chase v. Robson, 435 F.2d 1059 (7th Cir. 1970); State v. Sperry, 79 Wash.2d 69, 483 P.2d 608 (1971). But the maintenance of the integrity of an impartial jury is, nevertheless, a viable obligation and responsibility of the courts in the administration of justice.

Professor Thomas I. Emerson has cogently suggested helpful guidelines to a determination of appropriate limitations of First Amendment freedoms. "Toward a General Theory of the First Amendment," 72 Yale L.J. 877. He wrote:

"The crux of the problem is that the limitations, whatever they may be, must be applied by one group of human beings to other human beings. In order to take adequate account of this factor it is necessary to have some understanding of the forces in conflict, the practical difficulties in formulating limitations, the state apparatus necessary to enforce them, the possibility of distorting them to attain ulterior purposes, and the impact of the whole process upon achieving an effective system of free expression.

"* * *

"These considerations must be weighed in attempting to construct a theory of limitations. A system of free expression can be successful only when it rests upon the strongest possible commitment to the positive right and the narrowest possible basis for exceptions. And any such exceptions must be clear-cut, precise and readily controlled. Otherwise the forces that press toward restriction will break through the openings, and freedom of expression will become the exception and suppression the rule."

In our case, first, the forces in conflict are plain and easily understood, the demands of the media for unbridled publication versus the need to protect the integrity and impartiality of the jury. Second, there are no practical difficulties in formulating the limitation, it is a clear, explicit command limited to publicizing the names of the jurors. Third, there is no conceivable possibility, in order to attain an ulterior purpose, of distorting a right to order nondisclosure of jurors' names until the jury is discharged; and, finally, the impact of such an order upon achieving an effective system of free expression is minimal if not nonexistent.

In sum, an order precluding publication of jurors' names has no impact whatsoever upon the purposes of the First Amendment to assure unfettered expression of opinion and such an order is patently relevant to the support of the Sixth Amendment guaranty of an impartial jury. Thus, in applying Professor Emerson's final test that "there must be taken into account the whole impact of restriction on the healthy, functioning of a free society," we discern that the order here questioned has doubtful significance to the basic virtues of a free press but is plainly relevant to the support and protection of the proper administration of justice.

In Government of Virgin Islands v. Brodhurst, 285 F.Supp. 831 (D.C., 1968), the Court sustained the validity of a statute of the Virgin Islands making it a misdemeanor for any newspaper, radio or television station to publicize the name or picture of any child handled as a juvenile. Faced with the argument that a clear and present danger to fair juvenile administration had not been proved, the Court aptly quoted from American Communications Assn. v. Douds, 339 U.S. 382 at 397, 70 S.Ct. 674

**322**

at 683, 94 L.Ed. 925 (1950): "When the effect of a statute or ordinance upon the exercise of First Amendment freedoms is relatively small and the public interest to be protected is substantial, it is obvious that a rigid test requiring a showing of imminent danger to the security of the Nation is an absurdity." That is this case.

It is, of course, obvious that the public's right to know is wholly irrelevant to this situation. No public purpose is furthered by publication of the jurors' names on the first day of the trial rather than the last. The only imaginable use any member of the public might make of such information is an improper one—jury tampering. For the reasons stated,

It hereby is ordered, adjudged and decreed that the order of District Judge Grant L. Bowen entered in the case of "State of Nevada v. Thomas Lee Bean," which prohibited the publication of the names of the jurors during the progress of the trial, was and is a constitutional and valid order.