DES MOINES REGISTER AND
TRIBUNE COMPANY and
Michael Pauly, Plaintiffs,

Cedar Rapids Gazette Co., et
al., Intervenors,

v.

Honorable Robert OSMUNDSON,
Defendant.

No. 2-59429.

Supreme Court of Iowa.

Dec. 15, 1976.

Robert G. Riley and Glenn L. Smith of Duncan, Jones, Riley & Finley and Gary G. Gerlach, Des Moines, for plaintiffs.

David A. Elderkin of Wadsworth, Elderkin, Pirnie & Von Lackum, Cedar Rapids, for intervenor Cedar Rapids Gazette Co.

Robert C. Tilden and Patricia N. Fetzer of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for intervenor Cedar Rapids Television Co.

Kermit S. Sutton of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for intervenor Des Moines Professional Chapter, Society of Professional Journalists, Sigma Delta Chi.

Edward J. Kelly and David L. Phipps of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for intervenor Palmer Broadcasting Co.

William R. King of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for intervenor WMT, Inc.

Richard C. Turner, Atty. Gen., and Jim P. Robbins, Asst. Atty. Gen., for defendant.

McCORMICK, Justice.

In this case we are in the unusual position of issuing an opinion to explain a decision we have already made. On May 11, 1976, we entered an order in this original action enjoining defendant Honorable Robert Osmundson from enforcement of an order he entered a day earlier restraining all persons from disclosing the names, addresses and telephone numbers of jurors and alternates during the murder trial of Kandee Jacoby, then in progress in the Linn County district court. We ordered defendant to file the jury list forthwith as a public record in the Linn County clerk's office. Because of the exigencies of time we decided the case without opinion, reserving jurisdiction to issue an opinion after supplementary briefing of the issues by the parties. In the ensuing months the parties filed their additional briefs, and we now issue our opinion.

The principal question is whether defendant's order of May 10 restraining disclosure of jurors' identities was an unwarranted restraint on freedom of the press. A subsidiary question is whether a list of trial jurors is a public record.

The facts upon which these questions must be decided are not in dispute. Kandee Jacoby was charged with the murder of her husband Douglas. The homicide occurred January 3, 1976. Pretrial discovery and other procedures took several months, and the case was reached for trial on May 3, 1976. Before trial defendant sustained a defense motion requesting that *voir dire* of potential jurors be conducted individually and with the public excluded. On the

morning *voir dire* was to commence, defendant entered the following order without request from anyone that he do so:

It is herewith ordered that during the trial of this case and until the jury is discharged:

1. No person shall disclose or in any way make public, the name, address or telephone number or in any way identify any individual juror.

2. No person shall photograph or make public any drawing, sketch or other reproduction of the physical appearance of any juror.

\* \* \* \* \* \*

4. No photographs or pictures shall be taken above the second floor of the Linn County Court House until after the jury has been discharged.

A copy of the order was furnished to the jury panel before commencement of *voir dire*.

A transcript of *voir dire* discloses that thirty-six panel members were examined. Only two persons were excused for cause during the process of selecting twelve jurors and two alternates. The State and defense each interrogated the panelists extensively regarding the homicide victim's membership in a motorcycle gang called the "Chosen Few". The persons excused for cause expressed apprehension about retaliation by the Chosen Few against them or their families if they were members of a jury which acquitted defendant. Most panelists did not share this apprehension. In addition, most had been unaffected by pretrial publicity; few could remember what they may have read or heard about the case.

Almost all panelists, when asked, said defendant's order relating to publicity during trial would not affect them. None of the jurors expressed any fear about intimidation or influences during the course of the trial. The only juror who said the restraint on publicity eliminated her apprehension about the motorcycle gang appears not to have understood the order would be in effect only during the trial, as shown by this colloquy:

Q. As a result of anything you may have read or heard about this case or read or heard about the Chosen Few Motorcycle Club, do you have any fear or apprehension that might in any way make you a little bit fearful of returning a verdict of not guilty if that's the way the evidence was?

A. Any fear I might have had was removed when Judge Osmundson said that the jurors' names would not be published.

The record does not show that the order served any purpose in allaying apprehension of any other panel members about the propensities of the Chosen Few. Among the several panelists who expressed apprehension about post-verdict retaliation, no specific basis having any relationship to the *Jacoby* case was revealed. The apprehension appears to have been rooted in the generally bad reputation of the motorcycle gang or general suspicion of those who ride motorcycles. One juror said, "Well, * * I just don't like motorcycles and anybody that's got to do with that."

The selection process was completed on May 5, 1976. Defendant called the names of the jurors selected to serve on the case. The jurors were seated with the public excluded. However, the public was not excluded from the swearing of the jury which immediately followed nor from any subsequent stage of the trial. Defendant kept the jury list, and no copy was filed in or available to the clerk's office.

On May 6, 1976, during the trial, plaintiffs Des Moines Register and Tribune Company, a publisher of newspapers of statewide circulation, and Michael Pauly, the company's state editor, filed an application in the criminal case asking that defendant revoke his May 3 order restraining publicity. When defendant informed counsel for plaintiffs that he would neither rule on the application nor revoke his order, plaintiffs brought an original action in this court seeking a temporary injunction restraining defendant from enforcement of his May 3 order.

Plaintiffs' petition for temporary injunction was heard by three members of this court on May 7, 1976. On the same date, this court entered an order sustaining the petition. This court's order provided in relevant part:

* * * It appears that the Order [of May 3] was entered without notice or evidentiary hearing in which the media might be heard and in which evidence on the critical issues involved could be developed. In these circumstances, and on the showing made on this submission, the Court finds that * * * the petition should be sustained. If the trial court's concern arises from apprehension about improper influences being brought to bear upon jurors during the course of the trial, other means including sequestration are available to protect the jurors.

Defendant was restrained from carrying out or enforcing his order of May 3.

Subsequent to entry of this court's order, plaintiffs published a courtroom sketch of the *Jacoby* jury and a photograph of several jurors taken outside the courthouse. They were unable to obtain a copy of the jury list because defendant had not received this court's order and had not filed the list in the clerk's office. On Saturday May 8, 1976, while the *Jacoby* trial was in recess for the weekend, defendant issued an order setting a hearing at 8:30 a. m. on Monday, May 10, 1976, to determine whether a new restraint on publicity should be imposed, limited to the following terms:

1. No person shall disclose or in any way make public the name, address, or telephone number of an individual juror, or alternate.

2. No photographs or pictures shall be taken above the second floor of the Linn County Courthouse until after the jury has been discharged and left the courthouse.

Notice of hearing was given to plaintiffs and local news media as well as to the parties in the *Jacoby* trial.

At the hearing on May 10, 1976, statements were made by defense counsel in the *Jacoby* case and by counsel for the news media. In addition counsel for plaintiffs questioned defendant. At the conclusion of

the hearing, defendant found that the publicity surrounding the case, including publicity about his May 3 order, created a danger that influences might be brought to bear on jurors during the trial if their identities were known. He said, "And we know of the actual fact of the case in another district where there were actual calls and a mistrial had to be declared."

He added:

Sequestration of the jury is not feasible or practical because of family and business commitments of the jurors who would have been available for selection, the concern expressed by the various jurors for the safety of their children and in some instances for themselves.

Now, it need not be their infallible judgment, nor it need not be real, but only apparent, and the concern was apparent to them.

The prior order was known to the prospective jurors and to counsel, and had an effect on the selection of the jurors * * *. And probably last, and least important of any reason, the cost of sequestration of twelve jurors and two alternates, at least two bailiffs to provide their rooms, three meals a day, supervision of these jurors, is an expense which the Court in its discretion determines * * * is not desirable in this case.

The judge then entered an order restraining publicity in the two particulars set out in his order of May 8.

Plaintiffs, joined by intervenors Cedar Rapids Gazette Co., Cedar Rapids Television Co., Des Moines Professional Chapter of Sigma Delta Chi, Palmer Broadcasting Co., and WMT, Inc., returned immediately to this court, with a "request for further order and mandamus" seeking to have defendant enjoined from enforcement of the restraint on disclosure of information about jurors in his May 10 order and to have him ordered to file the list of *Jacoby* trial jurors in the Linn County clerk's office as a public record. The request was submitted to this court *en banc* on May 11, 1976. Later the same date we entered our order granting the relief requested.

Subsequently, defendant complied with this court's order. The *Jacoby* trial proceeded to conclusion, resulting in a manslaughter conviction which is pending appeal. The record does not disclose whether the jury was sequestered either during the trial or during deliberations.

These facts establish the context in which the legal issues in this case arose and were decided.

I. *The restraint on publication of identity of jurors.* Plaintiffs and intervenors contend that defendant's order of May 10 restraining publication of the names, addresses and telephone numbers of *Jacoby* trial jurors constitutes an unconstitutional prior restraint on the press. They rely on the first amendment of the United States Constitution and art. I, § 7, of the Constitution of Iowa. The restriction on photography in the order of May 10 is not challenged and is not an issue here.

The pertinent portion of the first amendment provides that "Congress shall make no law * * * abridging the freedom * * * of the press." The first amendment is made applicable to the states through the due process clause of the fourteenth amendment. *Near v. Minnesota*, 283 U.S. 697, 707, 51 S.Ct. 625, 628, 75 L.Ed. 1357, 1363 (1931). The relevant part of Ia.Const. art. I, § 7, provides that "no law shall be passed to restrain or abridge the liberty * * * of the press." We believe the federal and state constitutional provisions, which contain almost identical language, impose the same limitation on abridgement of freedom of the press.

These constitutional provisions are a general prohibition of prior restraints on publication. A prior restraint imposes a gag on the right to publish as opposed to a sanction imposed after publication because of the content of what is published. The distinction is made in *Near v. Minnesota*, supra, where the Court quotes with approval the following statement by Blackstone:

" 'The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no *previous* restraints

upon publications, and not in freedom from censure for criminal matter when published. Every freeman has an undoubted right to lay what sentiments he pleases before the public; to forbid this is to destroy the freedom of the press; but if he publishes what is improper, mischievous or illegal, he must take the consequences of his own temerity.' 4 Bl.Com. 151, 152." 283 U.S. at 713–714, 51 S.Ct. at 630, 75 L.Ed. at 1366.

This distinction is echoed in Ia.Const. art. I, § 7, which includes this statement: "Every person may speak, write, and publish his sentiments on all subjects, *being responsible for the abuse of that right.*" (italics added).

In *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1, 5 (1971), the Supreme Court said, "Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity." The burden on the government is not reduced by the temporary nature of the restraint. *Nebraska Press Association v. Stuart,* —— U.S. ——, ——, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683, 697 (1976). In *Sheppard v. Maxwell,* 384 U.S. 333, 349–350, 86 S.Ct. 1507, 1515–1516, 16 L.Ed.2d 600, 613 (1966), the Court explained why the protection against prior restraints has particular force when applied to criminal proceedings:

"The principle that justice cannot survive behind walls of silence has long been reflected in the 'Anglo-American distrust for secret trials.' A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism. This Court has, therefore, been unwilling to place any direct limitations on the freedom traditionally exercised by the news media for

'[w]hat transpires in the courtroom is public property.' "

 It is an open question whether a court may ever enjoin the press, in advance of publication, from reporting or commenting on pending judicial proceedings. No such restraint has yet been sustained by the Supreme Court. In examining such restraints that Court has applied the standard posited by Learned Hand in *United States v. Dennis,* 183 F.2d 201, 212 (2 Cir. 1950), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). The question is whether the gravity of the evil, discounted by its improbability, justifies such invasion of freedom of the press as is necessary to avoid the danger. The question must be answered by examination of the evidence before the trial judge when the order was entered. *Nebraska Press Association v. Stuart,* supra, —— U.S. at ——, 96 S.Ct. at 2804, 49 L.Ed.2d at 699. By analogy to the analysis in *Stuart,* we believe it is necessary to determine (a) the existence, nature and extent of the evil sought to be avoided, (b) whether other measures would be likely to mitigate it, and (c) how effectively the restraining order would operate to prevent the threatened danger. Id.

 Defendant first contends that his order restraining publication of jurors' names was not a prior restraint. Sole authority for this contention is *Schuster v. Bowen,* 347 F.Supp. 319 (D.Nev.1972), vacated as moot, 496 F.2d 881 (9 Cir. 1974). In *Schuster* a federal district court sustained a state court order restraining publication of names of jurors in a penalty determination proceeding, where a death penalty sentence had earlier been set aside by the Nevada Supreme Court in a widely publicized and controversial decision. Although the judge said the restrictive order was not a prior restraint, he decided the case on the ground that the facts established a basis for an exception to the prohibition against prior restraints. He said the impact on the first amendment was minimal or nonexistent whereas the restraint helped maintain the integrity of an impartial jury guaranteed by the sixth amendment.

To the extent the *Schuster* court held an order restraining publication of trial jurors' names is not a prior restraint, it is inconsistent with the decisions of the Supreme Court in *Nebraska Press Association v. Stuart*, supra, and *New York Times v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). In addition, because the *Schuster* court did not apply the standard mandated in *Stuart* for testing the prior restraint, we find the case unpersuasive and distinguishable. It is also distinguishable on its facts.

Other cases besides *Stuart* and *New York Times* establish that a restraint of the kind involved here is a prior restraint and therefore subject to the *Stuart* test. See *CBS Inc. v. Young*, 522 F.2d 234 (6 Cir. 1975); *Sun Company of San Bernadino v. Superior Court*, 29 Cal.App.3d 815, 105 Cal.Rptr. 873 (1973); *New York Times Co. v. Starkey*, 51 A.D.2d 60, 380 N.Y.S.2d 239 (1976); *Beacon Journal Publishing Co. v. Kainrad*, 46 Ohio St.2d 349, 348 N.E.2d 695 (1976); *Cohen v. Everett City Council*, 85 Wash.2d 385, 535 P.2d 801 (1975). We find defendant's order constituted a prior restraint subject to challenge under the standard delineated in *Stuart*.

■ Defendant argues alternatively that his order did not restrain the press's right to publish the jurors' names but simply denied the press access to the jury list as a source of information. We disagree. The order in plain terms purported to bar any person from publishing this information. The order provided, "No person shall disclose or in any way make public" those names. If the order left any doubt of the judge's intent, his colloquy with counsel on May 10 eliminates it.

Defendant's order restricting publication of jurors' identities cannot survive the test prescribed in *Stuart*.

Unlike the situation in which he entered the May 3 order, the enforcement of which we enjoined on May 7, defendant held a hearing on notice to the parties and media before entering the May 10 order. It is difficult to conceive how such a restrictive order could ever validly be entered without a prior evidentiary hearing in which the parties and representatives of the press have a right to present evidence and be heard. See *United States v. Schiavo*, 504 F.2d 1 (3 Cir. 1974).

Enough evidence was received to show the basis of the order. However, this basis falls far short of the kind of showing which is necessary to justify a prior restraint.

■ First, no evidence was adduced to show any danger existed that the trial jurors might be exposed to intimidation *during* trial. None of them indicated any such apprehension other than vague and undifferentiated disapprobation and suspicion of the Chosen Few motorcycle gang or of any group which rides motorcycles. To the limited extent that any apprehension was expressed during *voir dire* it was founded in unsupported although probably sincere speculation that a not guilty verdict might result in *post-verdict* harassment. However, there was simply no basis in the record for concluding any danger existed to the jurors or to the parties' rights to fair trial if the identities of trial jurors were known by the public prior to discharge of the jury after verdict. Therefore the first element under the *Stuart* test, demonstrating the substantiality of the harm sought to be avoided, was not satisfied.

■ Even assuming such danger existed, alternatives existed which were not adequately considered. The most effective way to insulate jurors from improper influences during the course of their trial service is to sequester them. See § 780.19, The Code. Arguments advanced by defendant against use of this alternative are untenable. First is the assertion that sequestration would disrupt the business and personal lives of the jurors during the trial. This begs the question. When sequestration is necessary, this limited intrusion is a burden which is demanded and expected of citizens who accept responsibility for jury service. Second is the suggestion the jurors acquired a kind of vested interest in the restraint on publicity because of the May 3 order. This argument is unpersuasive. The May 3 order was invalid; moreover, the only juror

who during *voir dire* purported to take comfort in it misunderstood it, obviously believing it would shield her identity after the trial. Third is the allegation that sequestration would not ameliorate the concern of jurors for the safety of their families from whom they would be separated during trial. The record does not support the premise that such concern existed or, if it did, that it had any basis in fact. Finally, the objection is advanced that sequestration would cost money. Defendant acknowledges this argument is entitled to little weight; in the context of this first amendment problem we believe it is entitled to no weight.

We do not say the jury should have been sequestered. We only say that the judge had discretion to sequester the jury if he believed the jurors required protection from improper influences during trial. However, we perceive no basis in the record for such belief.

■ Defendant's May 10 order restraining disclosure of jurors' identities was issued in violation of a precept well stated in *Beacon Journal Publishing Co. v. Kainrad*, supra, 348 N.E.2d at 697:

> "An order not to publish cannot be considered unless the circumstances are imperative, and it appears clearly in the record that a defendant's right to a fair trial will be jeopardized and that there is no other recourse within the power of the court to protect that right or minimize the danger to it.
>
> "Before issuing any such order not to publish, it is obligatory upon the court to hold a hearing and make a finding that all other measures within the power of the court to insure a fair trial have been found unavailing and deficient."

An order restraining publication must be the last resort of the court. Here, the second element of the *Stuart* test, demonstrating the unavailability of satisfactory alternatives to restraint of the press, was not met.

■ Even if the first two elements had been established, the record fails to show how the May 10 order would protect against the danger. If the threat was of post-trial harassment, the order would be entirely ineffectual because jurors' identities would be made public upon their discharge after verdict. If the threat was of harassment during trial, those who wished to learn who was on the jury had only to attend the trial. At least one member of the Chosen Few testified in the proceeding. Anyone determined to exert improper influences on jurors could do so despite the restraint on publication of their names. On this basis, the restraint on publicity could not effectively obviate the asserted danger.

Defendant's May 10 order restraining publicity about jurors fails to meet the *Stuart* standard in any respect.

■ We hold that defendant's order, insofar as it restrained disclosure of information about the Jacoby trial jury, was an unwarranted prior restraint on freedom of the press under the first amendment and under Ia.Const. art I, § 7.

II. *The jury list as a public record.* Plaintiffs and intervenors also contend defendant's order contravened statutes making a jury list a public record accessible to the press.

■ Code chapter 68A is Iowa's freedom of information statute. Under that statute public records are "all records and documents of or belonging to this state * *." § 68A.1. Under Code §§ 779.13 and 779.15, a list of trial jurors must be prepared for all trials of indictable offenses. Hence a jury list is a public record. It comes within both the statutory definition and a more restrictive definition in prior case law:

> "[A] public record or writing is one which an officer is required by law to keep or which is intended to serve as a memorial and evidence of something written, said, or done by the officer or public agency." *Linder v. Eckard*, 261 Iowa 216, 220, 152 N.W.2d 833, 836 (1967).

■ Here the record was not in custody of the clerk as contemplated by Code §§ 779.13 and 779.15. However, the provisions of chapter 68A do not make access to public records dependent on the identity of the person in possession of them:

"Every citizen of Iowa shall have the right to examine all public records and to copy such records, and the news media may publish such records, unless some other provision of the Code expressly limits such right or requires such records to be kept secret or confidential." § 68A.2, The Code.

This provision also expressly preserves the right to obtain certified copies of public records assured in § 622.46, The Code, which provides:

"Every officer having the custody of a public record or writing shall furnish any person upon demand and payment of legal fees therefore, a certified copy thereof."

Therefore, the fact that defendant rather than the clerk of court prepared the jury list and had custody of it does not change its character as a public record or the judge's duty as possessor to permit access to it under § 68A.2 or to provide certified copies under § 622.46.

■ Acknowledging the jury list might otherwise be a public record, defendant alleges a non-statutory exception must be made regarding jury lists where the accused's right to fair trial is involved and an "instantaneous determination" must be made. We do not agree. As our discussion in division I shows, we do not share defendant's premise that the determination either must or should be instantaneous.

■ Moreover, although jury lists are not among the express exceptions in § 68A.7, The Code, and no other provision of the Code purports to make them confidential, § 68A.8 provides an injunctive procedure whereby a public record may be declared confidential on a showing that "examination would clearly not be in the public interest and would substantially and irreparably injure any person or persons." Like the exceptions in § 68A.7, the procedure in § 68A.8 presupposes the document involved is in fact a public record. We do not think that § 68A.8 imposes an unreasonable burden on a person seeking to prevent access to a jury list as a public record.

When the first amendment is implicated, as in the present case, the Supreme Court's holding in *New York Times v. United States*, supra, teaches that the burden on one seeking to prevent publication of government records on grounds of secrecy must overcome the heavy presumption against prior restraints.

Having failed either to recognize or meet this burden, defendant cannot be said to have established an exception under § 68A.8. Cf. *Bruce v. Gregory*, 65 Cal.2d 666, 56 Cal.Rptr. 265, 423 P.2d 193 (1967); *Craemer v. Superior Court*, 265 Cal.App. 216, 71 Cal.Rptr. 193 (1968).

■ Nor is the situation changed because *voir dire* was conducted *in camera*. Defendant alleges the jury list could be kept secret because jury selection was in secret, relying on § 605.16, The Code:

"All judicial proceedings must be public unless otherwise specifically provided by statute or agreed upon by the parties."

Here, defendant argues, the parties agreed to select the jury privately and this right is not meaningful unless the identity of jurors selected in private is also kept secret.

Plaintiffs challenge the right of the court to permit a closed *voir dire*. We find it neither necessary nor appropriate to decide that issue in this case.

Instead, assuming the court was right in allowing the *in camera* proceeding, it does not logically follow that the jury list should also be secret. If it did, the same reasoning would support a holding that the only public records accessible to the public under chapter 68A are records resulting from public proceedings, whereas all records resulting from private proceedings or private actions of public officers are confidential. This interpretation is flatly contrary to the plain terms of chapter 68A. The reasons for a closed *voir dire* would not necessarily or invariably support making the jury list confidential. In situations where they would do so, if any, the injunctive procedure under § 68A.8 is available.

■ This holding provides an independent basis under the first amendment for

holding defendant's restraint on publication of the jury list was illegal. Information which is revealed in public documents is in the public domain. The Supreme Court cases "have foreclosed any serious contention that further disclosure of such information can be suppressed before publication or even after publication." *Nebraska Press Association v. Stuart*, supra, —— U.S. at ——, 96 S.Ct. at 2820, 49 L.Ed.2d at 719 (Brennan, J., concurring). The reason for this principle is given in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495–496, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328, 349–350 (1975):

> "By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served. Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media. The freedom of the press to publish that information appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business. In preserving that form of government the First and Fourteenth Amendment command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection."

We hold that the *Jacoby* trial jury list was a public record to which the media were entitled access under Code chapter 68A.

Although the parties' excellent briefs raise some issues and arguments which we have not discussed, we have discussed the issues which we find dispositive.

We confirm our decision of May 11, 1976.