# IN THE SUPREME COURT OF IOWA

No. 10–0163

Filed July 15, 2011

JUDICIAL BRANCH and
STATE COURT ADMINISTRATOR,

   Plaintiffs,

vs.

IOWA DISTRICT COURT
FOR LINN COUNTY,

   Defendant.

---

Certiorari to the Iowa District Court for Linn County, Casey D. Jones, District Associate Judge.

The Judicial Branch and the State Court Administrator seek certiorari contending the district court acted illegally when it ordered a criminal case that ended in dismissal to be removed from the electronic court docket entries on the Iowa Court Information System and the website Iowa Courts Online. **WRIT SUSTAINED.**

Thomas J. Miller, Attorney General, and Pamela D. Griebel, Assistant Attorney General, for plaintiffs.

Raphael M. Scheetz, Cedar Rapids, and D. Lew Eells of Eells & Tronvold, P.L.C., Cedar Rapids, for defendant.

**MANSFIELD, Justice**.

> It not uncommonly happens, that there are two statutes existing at one time, clashing in whole or in part with each other, and neither of them containing any repealing clause or expression. In such a case, it is the province of the courts to liquidate and fix their meaning and operation.

*The Federalist No. 78* (Alexander Hamilton).

In this proceeding, we are asked to determine whether either Iowa Code section 692.17 (Supp. 2009)[1] or the Iowa Constitution requires the Iowa Judicial Branch to remove from its statewide computerized docket system all information regarding any criminal cases that have been resolved in favor of the defendant. Although the matter is not entirely free from doubt, because there appear to be conflicting statutory provisions, we conclude that section 692.17 does not require removal of this information. We also hold the Iowa Constitution has not been violated. Therefore, we sustain the requested writ of certiorari.

**I. Background Facts and Proceedings.**

In February 2009, J.W.[2] was arrested and charged with operating while intoxicated, first offense, along with three accompanying traffic offenses. After J.W. prevailed on a motion to suppress evidence, the State moved to dismiss the four criminal charges. On July 20, the district court granted the motion and dismissed the charges with costs assessed to the State.

---

[1]During the 2009 legislative session, the General Assembly added internal numbering to Iowa Code sections 692.17 and 692.18. *See* 2009 Iowa Acts ch. 24, § 4; *id.* ch. 133, § 174. Since this numbering and other nonsubstantive changes from the 2009 session do not affect our analysis, we will refer to the current, renumbered sections of the law unless specifically noted otherwise.

[2]We will refer to J.W. by his initials only.

On November 18, J.W. filed a motion to exclude and expunge any information pertaining to the four dismissed criminal charges pursuant to Iowa Code section 692.17, which provides:

> 1. Criminal history data in a computer data storage system shall not include arrest or disposition data or custody or adjudication data after the person has been acquitted or the charges dismissed . . . .
>
> 2. For the purposes of this section, "*criminal history data*" includes the following:
>
> *a.* In the case of an adult, information maintained by any criminal justice agency if the information otherwise meets the definition of criminal history data in section 692.1, except that source documents shall be retained.

J.W. specifically requested that the information be removed from the Iowa Court Information System (ICIS), including the website Iowa Courts Online, and the computer data storage systems for the Linn County Sheriff, the Cedar Rapids Police, the Iowa Division of Criminal Investigation, and the Federal Bureau of Investigation (FBI).

On December 28, the district court granted J.W.'s request to expunge the four dismissed criminal charges from the computer data storage systems for the Department of Public Safety and its Division of Criminal Investigation, the Linn County Sheriff's Office, the Linn County Attorney's Office, and the Cedar Rapids Police Department.[3]  The court denied the request as to the FBI.  The court then went on to find that the "computer data storage systems" for the state judicial branch included the electronic docket entries on ICIS and the website Iowa Courts Online and ordered information relating to the four dismissed criminal charges to be removed from those repositories.

---

[3]Those agencies did not challenge the order and have not appealed.

J.W. did not ask that any action be taken with respect to the hard copy records of his dismissed criminal case maintained by the Linn County District Court.

On January 19, 2010, the Iowa Attorney General, appearing on behalf of the Iowa Judicial Branch and the Iowa State Court Administrator, filed a petition to vacate the order, for a new hearing, and for a stay. The attorney general argued the computerized information pertaining to J.W.'s charges kept by the state judicial branch consisted of court docket entries that met the definition of "public records" under Iowa Code section 692.18(1). That section provides:

> Nothing in this chapter shall prohibit the public from examining and copying the public records of any public body or agency as authorized by chapter 22.[4]

*Id.* § 692.18(1). The attorney general also argued that the judicial branch's computerized docket was a "source document" whose retention was required by section 692.17(2)(*a*).[5]

J.W. opposed the attorney general's petition. He argued that section 692.17 required removal of the information from the state judiciary's computer systems, and even if it did not, the Equal Protection Clause of Article I section 6 of the Iowa Constitution compelled the same

---

[4]Section 22.7(9) of chapter 22 further provides that "criminal history data shall be public records."

[5]Section 692.17(2) states that "criminal history data" generally includes information maintained by any criminal or juvenile justice agency. Section 692.1(7) (2009) defines "criminal or juvenile justice agency" as any agency or department "which performs as its principal function the apprehension, prosecution, *adjudication*, incarceration, or rehabilitation of criminal or juvenile offenders." (Emphasis added.) The attorney general did not dispute, either in his filings below or in his briefing in this court, that the state judicial branch was a "criminal or juvenile justice agency." *Cf.* Iowa Code § 692B.2(1)(*g*)(1)(a) (Supp. 2009) (defining the term "criminal justice agency" to include "courts" for purposes of the National Crime Prevention and Privacy Compact Act). Since the attorney general has not argued the point, we do not reach the question whether the state judicial branch is a "criminal or juvenile justice agency" for purposes of chapter 692, but simply assume for purposes of this appeal that it is.

result. In support of his constitutional argument, J.W. maintained that individuals whose criminal cases had terminated in their favor should receive at least the same degree of record expungement as persons who had been convicted and received deferred judgments. The district court denied the attorney general's requests on January 21.

On January 25, the attorney general petitioned for a writ of certiorari and requested a stay. Our court denied the requested stay, but granted the petition for writ of certiorari.

## II.  Issues on Appeal.

This case presents two questions: (1) Does Iowa Code section 692.17 require the removal of acquitted or dismissed criminal charges from the court docket entries on ICIS and the website Iowa Courts Online?  (2) If the court docket entries are not removed from ICIS and the website Iowa Courts Online, is the Equal Protection Clause of the Iowa Constitution violated because defendants who plead guilty and are granted deferred judgments under section 907.3 may have their records expunged under section 907.9, but defendants who are acquitted or have their charges dismissed continue to have their records open to the public?

## III.  Standard of Review.

In a certiorari case, our review is for the correction of errors at law. *Johnson v. Iowa Dist. Ct.*, 756 N.W.2d 845, 847 (Iowa 2008).  We may examine only the jurisdiction of the district court and the legality of its actions.  Iowa R. Civ. P. 1.1401; *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009).  An illegality exists when the district court's factual findings are not supported by substantial evidence or when the district court has not properly applied the law.  *State v. Iowa Dist. Ct.*, 750 N.W.2d 531, 534 (Iowa 2008).

## IV. Statutory Analysis.

This case requires us to reconcile the following statutory provisions: (1) Iowa Code section 692.17(1), which provides that "[c]riminal history data in a computer data storage system shall not include . . . disposition data . . . after the person has been acquitted or the charges dismissed"; (2) section 692.17(2)(*a*), which requires "source documents [to] be retained" for cases involving adults; (3) section 692.18(1), which provides that "[n]othing in this chapter shall prohibit the public from examining and copying the public records of any public body or agency as authorized by chapter 22"; (4) section 22.7(9), which provides that "criminal history data shall be public records"; and, finally, (5) section 602.8104, which requires clerks of court to keep a "record book which contains the entries of the proceedings of the court and which has an index referring to each proceeding in each cause . . . ."

Our task appears on its face to be somewhat difficult, involving more than just the harmonization of two conflicting statutes as described by Hamilton in *The Federalist No. 78*. Instead, we have one law (section 692.17(1)) that requires disposition data to be removed from computer data storage systems when the defendant has been acquitted or had charges dismissed, another law (section 692.17(2)(*a*)) that requires "source documents" to be kept, another law (section 692.18(1)) that requires public access to public records, including criminal history data (section 22.7), and still another law (section 602.8104) requiring dockets to be maintained.

Before we try to reconcile these enactments, we will discuss their background and purposes in more detail.

**A. Chapter 692.** In the 1960's, the FBI decided to create a computer system that would centralize crime information from every

state and provide that information to law enforcement throughout the nation. The National Crime Information Center (NCIC) resulted and was launched in January 1967. *See* Fed. Bureau of Investigation: National Crime Information Center, *History and Milestones*, www.fbi.gov/about-us/cjis/ncic/ncic_history (last visited July 15, 2011).

In response to the formation of NCIC, the General Assembly enacted the Criminal History Data Act in 1973. *See* 1973 Iowa Acts ch. 294 (originally codified at Iowa Code ch. 749B (1975) and now codified at ch. 692 (2009 and Supp. 2009)). The purpose of the Act was twofold: (1) "to control the dissemination of all informational data centrally collected by the Department [of Public Safety]"; and (2) "to establish standards for the use of the crime computer system by all agencies with access to that system." Note, *The Dissemination of Arrest Records and the Iowa TRACIS Bill*, 59 Iowa L. Rev. 1162, 1172 (June 1974) [hereinafter Note].

The law defined three general types of informational data: criminal history data, intelligence data, and surveillance data. *See* Iowa Code § 692.1(5) (defining "criminal history data"), 692.1(14) (defining "intelligence data"), and 692.1(16) (defining "surveillance data"). "Criminal history data" consist of information that will largely mirror court filings, and include "[a]rrest data[, c]onviction data[, d]isposition data[, c]orrectional data[, a]djudication data[, and c]ustody data." *Id.* § 692.1(5)(*a*)–(*f*) (2009).

In the wake of this legislation, the Department of Public Safety (DPS) established a statewide system known as the Iowa on-line warrants and articles (IOWA) criminal justice information system. *See id.* § 692.14; Iowa Admin. Code r. 661—8.101.

The IOWA system provides access to databases from various state agencies within Iowa, from the Federal Bureau of Investigation's National Crime Information Center (NCIC), and from the motor vehicle departments of other states nationally through the National Law Enforcement Telecommunications System (NLETS). Information on an international basis is also provided by NCIC and NLETS through interfaces to Canadian Police Information Centre and to INTERPOL. The NLETS system also provides administrative message traffic between Iowa criminal justice agencies and criminal justice agencies throughout the United States.

The IOWA system allows criminal justice agencies to:

1. Access nationwide computerized banks of information such as wanted, missing, and unidentified persons; stolen vehicles; stolen articles; stolen boats; stolen guns and stolen securities.

2. Access driver license and motor vehicle information in-state as well as out-of-state.

3. Exchange criminal history information on a national basis.

4. Communicate by use of administrative messages with other criminal justice agencies worldwide.

Iowa Admin. Code r. 661—8.102. The IOWA system is accessible to criminal justice agencies through secure terminals authorized by the DPS. Iowa Code § 692.14; Iowa Admin. Code r. 661—8.104.

From its enactment in 1973, the Criminal History Data Act has provided that criminal history data in a computer data storage system will not include "[a]rrest or disposition data after the person has been acquitted or the charges dismissed." *See* 1973 Iowa Acts ch. 294, § 17.[6]

---

[6]The law originally provided that criminal history data "does not include" arrest and disposition data when the person has been acquitted or the charges dismissed. *See* 1973 Iowa Acts ch. 294, § 17. In 1978, the General Assembly changed "does not include" to "shall not include." *See* 1978 Iowa Acts ch. 1029, § 43. This appears to be a clarification that the legislature intended to direct an outcome, rather than simply describe a state of affairs. *See* Note, 59 Iowa L. Rev. at 1178–79 (pointing out the confusion that existed under the "does not include" language).

It is undisputed that information about J.W.'s court case has been removed from the IOWA system.

**B. Court Dockets in Iowa**. The question this case presents is whether information about J.W.'s case must *also* be removed from the computerized docket maintained by the Iowa Judicial Branch. A "docket" is the official record of all the proceedings and filings in a court case. *Black's Law Dictionary* 517 (8th ed. 2004). Dockets are created and maintained by each of the clerks of the district courts. Iowa Code §§ 602.6604(1), 602.8102(3). For each case, the docket is indexed and contains

> the title and nature of the action, the place of hearing, appearances, and notations of the documents filed with the judicial officer, the proceedings in the case and orders made, the verdict and judgment including costs, any satisfaction of the judgment, whether the judgment was certified to the clerk of the district court, whether an appeal was taken, and the amount of any appeal bond.

*Id.* § 602.6604(1). Iowa Code section 602.8104(2) is framed in mandatory terms. It provides:

> 2. The following books shall be kept by the clerk:
>
> a. A record book which contains the entries of the proceedings of the court and which has an index referring to each proceeding in each cause under the names of the parties, both plaintiff and defendant, and under the name of each person named in either party.

*Id.* § 602.8104(2) (Supp. 2009).

Although the foregoing provision was adopted by the legislature in 1983, *see* 1983 Iowa Acts ch. 186, § 9104, dockets are as old as our state itself. Under the first laws of our state, dockets were manually created by the clerks of the district courts and consisted of "the original papers constituting the causes adjudicated or pending in th[e] court, and the books [for the business of the court]." Iowa Code § 144 (1851).

These books included a "record book," a "judgment docket," a "fee book," and a "sale book." *Id.* § 145(1)–(4). These original dockets were open to the public for examination. *See Woods v. Mains*, 1 Greene 275, 281 (Iowa 1848) (characterizing the judgment docket as "a public record book").

Historically, dockets were hard-copy books. Beginning in October 1991, though, a transition was made to electronic dockets on ICIS. By September 1997, all counties were using ICIS for their dockets. ICIS and the website Iowa Courts Online are now the official electronic dockets for the court system for the State of Iowa. *See* Iowa Judicial Branch, *Online Docket Records*, http://www.iowacourts.gov/Online_Court_Services/Online_Docket_Record/ (last visited July 15, 2011). Electronic dockets are becoming increasingly commonplace. *See United States v. McKenzie*, 539 F.3d 15, 19 (1st Cir. 2008) (holding that electronic docket could be used to prove defendant's prior state convictions and commenting that "electronic docket records are increasingly the norm in today's world").

As an official record of judicial proceedings that clerks of court are required to keep by law, dockets are "public records" under both statutory and common law. *See* Iowa Code § 22.1(3) (Supp. 2009) (defining "public records" to include "all records, documents, tape, or other information, stored or preserved in any medium, of or belonging to this state . . . or any branch [of state government]"); *Linder v. Eckard*, 261 Iowa 216, 220, 152 N.W.2d 833, 836 (1967) (setting forth the more restrictive common law definition of "public record" as a record "an officer is required by law to keep or which is intended to serve as a memorial and evidence of something written, said, or done by the officer or public agency"); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91–92 (2d Cir. 2004) (listing cases that extend First Amendment

protection to the public's right to access certain court documents); *Des Moines Register & Tribune Co. v. Osmundson,* 248 N.W.2d 493, 501 (Iowa 1976) (holding "a jury list is a public record"). The importance of dockets and the public's access to them has been described by a federal district court as follows:

> The collection of judicial records even in the less busy courthouse is substantial. Throughout the courts a sprawling amalgam of papers reflects action in connection with judicial proceedings. It is not misleading to think of courthouse papers as comprising a vast library of volumes which docket sheets are the table of contents. Without the card catalogue provided by alphabetical indices, a reader is left without a meaningful mechanism by which to find the documents necessary to learn what actually transpired in the courts. The indices thus are a key to effective public access to court activity. And the importance of public access to the proper functioning of our judicial system cannot be overstated.

*Globe Newspaper Co. v. Fenton*, 819 F. Supp. 89, 94 (D. Mass. 1993).

**C. The Section 692.17(2)(*a*) "Source Documents" Exception to Iowa Code Section 692.17(1)**. Although section 692.17(1) provides that criminal history data in a computer data storage system shall not include disposition or adjudication data after the person has been acquitted or the charges dismissed, section 692.17(2)(*a*) makes clear that "source documents shall be retained" in the case of an adult.

This language was not part of the original legislation. In 1993, the General Assembly amended section 692.17 to provide that criminal history data "*includes* the source documents of the information included in the criminal history data." *See* 1993 Iowa Acts ch. 115, § 8 (emphasis added). Two years later, the legislature changed course and amended section 692.17 to provide that "source documents shall be retained" in the case of an adult. *See* 1995 Iowa Acts ch. 191, § 46. This provision

remains in the law to this day. Until now, we have not been called upon to interpret it.

**D. The Section 692.18(1) "Public Records" Exception to Iowa Code Section 692.17(1).** As we have noted above, Iowa Code section 692.18(1) states that nothing in chapter 692 "shall prohibit the public from examining and copying the public records of any public body or agency as authorized by chapter 22." This language was part of the 1973 legislation. *See* 1973 Iowa Acts ch. 294, § 18. However, the section as a whole has undergone considerable change. That is, the next sentence originally read, "Criminal history data and intelligence data in the possession of the department or bureau, or disseminated by the department or bureau, are not public records . . . ." *Id.* In 1996, the legislature revised this language entirely. Chapter 22 and chapter 692 were amended to make clear that criminal history data *are* public records. *See* 1996 Iowa Acts ch. 1150, §§ 1, 8. This court has not previously construed section 692.18(1) either.

**E. Harmonizing the Statutes.** As the foregoing discussion indicates, we have a law dating to 1973 that requires removal of arrest or disposition data from criminal history data in a computer data storage system; an exception to that law enacted in 1996 that criminal history data are public records and must be accessible to the public; another exception to that law adopted in 1995 that source documents are to be retained; and yet another law dating back to at least 1983 requiring dockets to be kept.

Our job is to consider a statute as a whole, rather than isolated parts. *Thoms v. Iowa Pub. Employees' Ret. Sys.*, 715 N.W.2d 7, 13 (Iowa 2006). When construing a statute, we "must be mindful of the state of the law when it was enacted and seek to harmonize the statute, if

possible, with other statutes on the same subject matter." *State v. Dann*, 591 N.W.2d 635, 638 (Iowa 1999).

> [S]tatute[s] should be construed as to give meaning to all of them, if this can be done, and each statute should be afforded a field of operation. So, where the enactment of a series of statutes results in confusion and consequences which the legislature may not have contemplated, the courts must construe the statutes to reflect the obvious intent of the legislature and permit the practical application of the statutes.

*Nw. Bell Tel. Co. v. Hawkeye State Tel. Co.*, 165 N.W.2d 771, 774–75 (Iowa 1969) (quoting 82 C.J.S. *Statutes* § 366, at 810–12 (now found at 82 C.J.S. *Statutes* § 476, at 619–20 (2009))).

Putting these provisions together, we do not believe the legislature has directed the judicial branch to purge from its official docket all criminal cases that ended in the defendant's favor. The computerized docket on ICIS and Iowa Courts Online is not replicated elsewhere. It is the only docket. Therefore, by erasing information from that docket, the judicial branch would be acting at odds with section 602.8104(2)(*a*) that requires a docket to be kept of "each proceeding in each cause." *See* Iowa Code § 4.7 (2009) (specific statute prevails over general statute in the event of irreconcilability); *Burton v. Univ. of Iowa Hospitals & Clinics*, 566 N.W.2d 182, 189 (Iowa 1997) (same).

Also, because there is no other version of the docket, the docket is potentially a "source document" whose retention is required by section 692.17(2)(*a*) (Supp. 2009). It is true that the docket is, generally, a compilation of information that can be gleaned by examining the original court filings. In that sense, other documents are the "source" of the docket. But the docket in Iowa has independent legal significance and is the "source" of other things, such as the record on appeal. *See* Iowa Rs. App. P. 6.801, 6.802(1) (providing that the certified copy of the docket is

part of the record on appeal and requiring the district court clerk to transmit certified copies of "the docket entries in the district court proceeding" when an appeal is taken). We think an appropriate analogy is to the table of contents or the index to a book. One might or might not consider these items "source documents" depending on the context. They are derived from the main text of the book, and they are based on that text. On the other hand, when contrasted with a reprint of the entire book, they would be deemed part of the source.

The legislature also directed in 1996 that regardless of section 692.17(1), the public should have access to the public records of public bodies and agencies, including criminal history data. *See* Iowa Code § 692.18(1). We interpret this amendment to mean that public access to official records must be preserved, even if a defendant is acquitted or has the charges dismissed. That is, computerized files in the custody of individual criminal justice agencies should be deleted pursuant to section 692.17(1), but not in a way that defeats public access to existing court records, including the docket. *See City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 677 (Iowa 2005) (stating that "an amendment to a statute raises a presumption that the legislature intended a change in the law"). This interpretation also gives a meaningful scope to both provisions. Copies of certain criminal history data stored on the computer and used for internal agency purposes would be removed, but the public would continue to have access to the official docket.

One can argue that the public still has access to the hard copy court file on J.W.'s dismissed criminal case at the Linn County Courthouse. But without a docket, the access would be more theoretical than real. Someone would have to know already what to look for, such

as a case number. Moreover, this argument ignores the point that the docket itself is part of the official record to which the public is guaranteed access.

The original version of chapter 692 was passed during the Watergate era, in 1973. At that time, the public did not have computers; they were largely a monopoly of the government and business. Thus, the legislature's concern, when it enacted the Criminal History Data Act, appears to have been the potential for error and misuse of a DPS computer system that was being developed to be incorporated in the NCIC. *See* Note, 59 Iowa L. Rev. at 1171–72 (discussing the contemporary concerns that led to the enactment of the law).

Hence, the General Assembly did not require *all* arrest or disposition data to be removed when a criminal case was resolved in the defendant's favor, but only such data as were "in a computer data storage system." Since then, computers have become ubiquitous and the judicial branch has shifted from hard copy to computerized dockets. But in the meantime, the legislature has passed laws requiring complete dockets to be maintained, source documents to be preserved, and the public to have access to criminal history data. We think that giving a reasonable effect to all these laws leads to the conclusion that the judicial branch need not alter its official docket.

At present, Iowa's court systems are transitioning to an electronic data management system (EDMS) whereby all court records—not only the docket—will be maintained electronically. If J.W.'s position were taken to its logical conclusion, arguably court files themselves would have to be removed whenever the proceeding ended in the defendant's favor, because those files would constitute "[c]riminal history data in a

computer data storage system." We are reluctant to embrace a view that the legislature intended to require the courts to rewrite historical events.

Finally, we need to emphasize that this case is not about whether criminal cases that ended in dismissals or acquittals should be publicly available on Iowa Courts Online. While that is undoubtedly J.W.'s concern, he frankly admits—and we agree—that section 692.17(1) must be interpreted as an all-or-nothing proposition. If that provision requires case information to be removed, it requires it to be removed for everyone, including judges and other court personnel. While there might be reasons to limit public rather than judicial access to this information, J.W.'s construction of the statute does not allow for that possibility. Instead, it would require the official court docket as accessed by anyone to have all traces of this information removed.

That is not what happens with respect to deferred judgments. A deferred judgment is not erased from the official record; rather, under a specific provision of law, a separate confidential docket is maintained of those judgments, which is accessible to certain officials within the judicial and the executive branches but not to the general public. *See* Iowa Code § 907.4 (2009).

## V. Equal Protection.

In the alternative, J.W. asserts that if section 692.17 does not require removal of his case information from ICIS (including Iowa Courts Online), then the Equal Protection Clause of the Iowa Constitution has been violated. *See* Iowa Const. art. I, § 6 ("All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."). J.W. argues that it is unfair to treat recipients of a deferred judgment, whose criminal cases

are not accessible to the public, more generously than individuals who were not convicted of a crime.

The Equal Protection Clause requires that "similarly situated persons be treated alike under the law." *In re Det. of Williams*, 628 N.W.2d 447, 452 (Iowa 2001); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313, 320 (1985).

> The first step in determining whether a statute violates equal protection is to determine whether the statute distinguishes between similarly situated persons. If the statute treats similarly situated persons differently, the court must then determine what level of review is required—strict scrutiny or rational basis. A statute is subject to strict-scrutiny analysis—the state must show the classification is narrowly tailored to a compelling state interest—when it classifies individuals "in terms of their ability to exercise a fundamental right or when it classifies or distinguishes persons by race or national origin." All other statutory classifications are subject to rational-basis review in which case the [challenging party] must show the classification bears no rational relationship to a legitimate government interest.

*Wright v. Iowa Dep't of Corr.*, 747 N.W.2d 213, 216 (Iowa 2008) (quoting *Williams*, 628 N.W.2d at 452) (citations omitted).

Assuming for present purposes that Iowa law with respect to the public availability of court records treats similarly situated persons differently, we nonetheless believe a rational basis review applies here[7] and that the law passes that test. Persons who have had criminal proceedings terminated in their favor are not a suspect class. Nor do we believe that making records of court proceedings available burdens a fundamental right. The legislature could rationally determine that deferred judgments should not be accessible to the public but dismissals

---

[7]J.W.'s counsel conceded at oral argument that a rational basis review applies here.

and acquittals should be. The legislature could rationally have concluded that denying public access to criminal proceedings that result in a deferred judgment serves the legitimate governmental purposes of promoting rehabilitation and incentivizing defendants to meet the terms of their accompanying probation. On the other hand, the legislature could have rationally concluded that denial of public access to dismissals and acquittals is not needed because the public can see for themselves that the charges were resolved in the defendant's favor.

## VI. Conclusion.

This case illustrates the impact of the internet on our daily affairs. Dockets always have been public records, but until the Iowa state court dockets became computerized and available on-line, it was not easy for the public to use them. Now, one can learn of any person's past involvement with Iowa's court system by making a few mouse clicks and a few strokes at a keyboard.

We are mindful of J.W.'s concerns about on-line public access to criminal cases that were terminated in the defendant's favor. Our decision does not foreclose steps by the judicial branch to address these concerns. We hold only that Iowa Code section 692.17(1) does not require criminal cases that ended in dismissal or acquittal to be removed from ICIS or the website Iowa Courts Online. In addition, making such information available to the public, while withholding public access to deferred judgments, does not violate the Equal Protection Clause of the Iowa Constitution.

**WRIT SUSTAINED.**