# IN THE SUPREME COURT OF IOWA

No. 18–1366

Filed May 10, 2019

**STATE OF IOWA,**

Appellee,

vs.

**JANE DOE,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, Becky Goettsch, District Associate Judge.

Defendant appeals district court ruling denying motion to expunge record and rejecting equal protection challenge to requirement to pay costs assessed for court-appointed counsel. **AFFIRMED.**

Robert J. Poggenklass of Iowa Legal Aid, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, John P. Sarcone, County Attorney, and Levi Grove, Assistant County Attorney, for appellee.

**WATERMAN, Justice.**

This appeal presents a facial constitutional challenge to Iowa Code section 901C.2 (2018), the expungement statute enacted in 2016, which creates a statutory right to expungement, subject to several conditions, including payment of all court-imposed costs and fees. An indigent defendant was denied expungement in this case for failure to pay off her court-appointed attorney fees. She argues that condition violates the Equal Protection Clauses of the Federal and Iowa Constitutions because defendants who owe fees to privately retained attorneys can expunge their criminal records, while defendants owing court-appointed attorney fees cannot. The district court rejected her constitutional challenge and denied her motion to expunge her record. We retained her appeal.

On our review, we affirm. There is no constitutional right to expunge one's criminal record. The legislature created a statutory right subject to conditions. This equal protection claim does not involve a fundamental right or suspect class, so we apply rational basis review. The legislature could reasonably condition expungement on payment of costs in order to incentivize defendants to satisfy court debt. The facial constitutional challenge fails.

## I. Background Facts and Proceedings.

On April 29, 2009, police responded to a 911 call at 3 a.m. reporting that a man was holding a woman at knifepoint at a duplex on Southwest Third Street in Des Moines. Witnesses told officers that the man fled the residence from an upstairs rear window. Officers checked the area but found no suspect and noticed the windows were closed on the back side of the house and the grass below looked undisturbed.

The officers decided to enter the residence to find the man with the knife. They encountered Jane Doe at the front door. Doe identified

herself as the victim but stood in the entryway and told officers she did not want them to come in. Doe blocked the door, refused the officers' requests to step aside, and shoved them as they entered. The officers physically removed Doe from the doorway, handcuffed her, and placed her in a squad car while they searched the residence.

The officers found a man inside hiding in a closet. They learned that Doe had told witnesses to lie about what had happened and to report falsely that the man who assaulted her had jumped out the rear window to get away. The witnesses' descriptions matched the man in the closet. Doe then told police that she and the man—the father of her child—began arguing after he received a phone call from another woman. Doe said she became upset, pulled a knife on him, and bit his finger. Doe was arrested.

Doe was charged by trial information with one count of domestic abuse assault with a dangerous weapon in violation of section 708.2A(2)(c) (2009) and one count of assault on a police officer in violation of section 708.3A(4). Doe submitted a financial affidavit and requested a court-appointed attorney to represent her. Doe's affidavit stated that she was a single mother supporting one child and her only source of income was $250 monthly for food assistance. The court found that Doe was unable to pay for an attorney and appointed one to represent her.

On August 3, Doe's court-appointed attorney filed a motion to withdraw and informed the court that Doe and the State had reached an agreement whereby if Doe successfully completed a family violence class by September 15, the State would dismiss the charges against her. The court approved the attorney's withdrawal and appointed another attorney to represent Doe.

Doe successfully completed the class. The State filed a notice of intent not to prosecute, which stated that costs would be assessed to Doe. The district court entered an order dismissing the charges without prejudice and assessed Doe $718 in costs, all for her court-appointed attorney fees. The record is silent as to whether the district court determined Doe had a reasonable ability to pay those costs at that time. Doe did not object to, nor did she appeal, the cost assessment.

Nearly a decade later, and two years after the legislature enacted section 901C.2, Doe filed a motion to expunge this case from her criminal record. Doe still owed $550 of the court debt when she sought expungement, having paid $168. She raised a facial constitutional challenge to the statutory requirement that she pay all assessed court costs as a condition for expungement. She did not ask the district court to determine she had a present inability to pay the court debt, nor did she ask that the underlying court debt be extinguished based on the absence of a judicial finding in 2009 that she then had a reasonable ability to pay the assessed fees.

The district court denied her motion for expungement and rejected her constitutional argument. The court stated, "In her financial affidavit [in 2009] she signed a statement that she understood she may be required to repay the State for attorney fees and costs." The district court continued,

> [Doe] argues requiring an indigent person to reimburse attorney fees prior to expungement, unlike an individual who hired their own counsel, violates the Constitution, specifically due process and equal protection. The Court rejects this argument. [Doe] was made aware of the possibility of reimbursing attorney fees and that expungement could not occur until all fees and assessed costs were paid. This was part of the bargain [Doe] negotiated.

The court noted that Doe "may still obtain expungement if and when the fees are paid."

Doe appealed, and we retained the case. In her affidavit supporting her motion to waive the appellate filing fee, Doe attested that she received monthly food assistance of $500 and $426 monthly from the Family Investment Program and that she has two children, with a third due in August 2018. Doe estimated her monthly expenses are $1445. Our court waived the filing fee.

## II. Scope of Review.

We review constitutional challenges to statutes de novo. *State v. Sluyter*, 763 N.W.2d 575, 579 (Iowa 2009).

> [W]e must remember that statutes are cloaked with a presumption of constitutionality. The challenger bears a heavy burden, because it must prove the unconstitutionality beyond a reasonable doubt. Moreover, "the challenger must refute every reasonable basis upon which the statute could be found to be constitutional." Furthermore, if the statute is capable of being construed in more than one manner, one of which is constitutional, we must adopt that construction.

*State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005) (quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002)), *superseded by statute on other grounds*, 2009 Iowa Acts ch. 119, § 3 (codified at Iowa Code § 692A.103 (Supp. 2009)), *as recognized in In re T.H.*, 913 N.W.2d 578, 587–88 (Iowa 2018).

## III. Analysis.

**A. Iowa's Dismissal–Acquittal Expungement Statute.** There is no constitutional right to expunge one's criminal record. *See Judicial Branch v. Iowa Dist. Ct.*, 800 N.W.2d 569, 579 (Iowa 2011), *superseded by* 2015 Iowa Acts ch. 83, § 1 (codified at Iowa Code § 901C.2 (2016) (creating a limited statutory right to expunge certain criminal records); *see also Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 699 (5th Cir.

1997) ("There is no constitutional basis for a 'right to expungement.' "); *Duke v. White*, 616 F.2d 955, 956 (6th Cir. 1980) (per curiam) ("The right to expungement of state records is not a federal constitutional right."). Expungement is a matter of legislative grace. Prior to 2016, individuals acquitted of a crime or whose criminal charges were dismissed could not expunge the charges from their criminal records. On January 1, 2016, Iowa's first dismissal–acquittal expungement law took effect. With clarifying amendments, the current version of the law took effect in July 2016.[1] Iowa Code section 901C.2 (2018) gives individuals who were acquitted or had their charges dismissed the opportunity to expunge the criminal case from their criminal record. Section 901C.2(1) provides,

> 1. *a.* Except as provided in paragraph "*b*", upon application of a defendant or a prosecutor in a criminal case, or upon the court's own motion in a criminal case, the court shall enter an order expunging the record of such criminal case if the court finds that the defendant has established that all of the following have occurred, as applicable:
>
> (1) The criminal case contains one or more criminal charges in which an acquittal was entered for all criminal charges, or in which all criminal charges were otherwise dismissed.
>
> (2) All court costs, fees, and other financial obligations ordered by the court or assessed by the clerk of the district court have been paid.
>
> (3) A minimum of one hundred eighty days have passed since entry of the judgment of acquittal or of the order dismissing the case relating to all criminal charges, unless the court finds good cause to waive this requirement for reasons including but not limited to the fact that the defendant was the victim of identity theft or mistaken identity.
>
> (4) The case was not dismissed due to the defendant being found not guilty by reason of insanity.

---

[1]The amendments did not change any of the conditions for expungement, so we will use the most recent version of the statute in this opinion.

(5) The defendant was not found incompetent to stand trial in the case.

*b.* The court shall not enter an order expunging the record of a criminal case under paragraph "*a*" unless all the parties in the case have had time to object on the grounds that one or more of the relevant conditions in paragraph "*a*" have not been established.

"This statute was apparently enacted in response to our decision in *Judicial Branch v. Iowa District Court,* which held that existing Iowa laws did not require the removal of information relating to dismissed criminal cases from the courts' statewide computerized docket." *State v. Doe,* 903 N.W.2d 347, 351 (Iowa 2017); *see also Judicial Branch,* 800 N.W.2d at 571.

The parties agree that Doe has satisfied all of the required conditions for expungement except Iowa Code section 901C.2(1)(*a*)(2), as Doe has not paid all outstanding court costs and fees. Notably, Doe does *not* ask our court to superimpose a reasonable ability-to-pay determination at the time of expungement. While Doe mounts a facial equal protection challenge, she also argues she personally is presently indigent and unable to pay the remaining court costs, which are solely court-appointed attorney fees. Yet the relief she seeks in her facial challenge is not limited to presently indigent persons seeking expungement, but rather extends to anyone whose court debt preventing expungement consists of court-appointed attorney fees. The absence of a finding as to her own reasonable ability to pay in 2009 is irrelevant to her facial challenge. We turn to this facial challenge, which the district court rejected.

**B. Doe's Equal Protection Challenge.** Doe argues that section 901C.2 violates the Equal Protection Clause of both the United States and Iowa Constitutions by treating indigent defendants with outstanding

court-appointed attorney fees differently than other criminal defendants.[2] "[O]n a basic level, both constitutions establish the general rule that similarly situated citizens should be treated alike." *Lowe's Home Ctrs., LLC v. Iowa Dep't of Revenue*, 921 N.W.2d 38, 56 (Iowa 2018) (alteration in original) (quoting *LSCP, LLLP v. Kay-Decker*, 861 N.W.2d 846, 856 (Iowa 2015)).

"We generally consider the federal and state equal protection clauses to be 'identical in scope, import, and purpose.'" *Residential & Agric. Advisory Comm., LLC v. Dyersville City Council*, 888 N.W.2d 24, 50 (Iowa 2016) (quoting *War Eagle Vill. Apartments v. Plummer*, 775 N.W.2d 714, 719 (Iowa 2009)). "Unless a suspect class or a fundamental right is at issue, equal protection claims are reviewed under the rational basis test." *King v. State*, 818 N.W.2d 1, 25 (Iowa 2012). Doe has not alleged that a fundamental right or suspect class is at issue. We will apply the rational basis test consistent with our precedent. *Judicial Branch*, 800 N.W.2d at 579 ("Persons who have had criminal proceedings terminated in their favor are not a suspect class."); *State v. Dudley*, 766 N.W.2d 606, 615 (Iowa 2009) ("[T]he statute governing recoupment of the costs of legal assistance does not affect a fundamental right or classify on the basis of race, alienage, national origin, gender, or legitimacy" and therefore is "subject to a rational-basis review.").

We confront two threshold issues. First, the State argues that Doe has not shown that similarly situated parties are being treated differently for purposes of equal protection review. Second, the State argues that

---

[2]U.S. Const. amend. XIV, § 1 ("No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."); Iowa Const. art. I, § 6 ("All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens.").

Doe has raised only a disparate impact claim, which we have said is insufficient to maintain an equal protection claim. We find both arguments unavailing.

1. *Similarly situated.* "To allege a viable equal protection claim, plaintiffs must allege that the defendants are treating similarly situated persons differently." *King*, 818 N.W.2d at 24. The State argues that Doe cannot establish she is similarly situated to individuals who have paid all of their court costs and fees, nor can she show that all indigent defendants are similarly situated because some choose to represent themselves or their cases are dismissed before court-appointed counsel rendered any billable services.

In our view, the relevant groups to compare are individuals who owe fees to a private attorney and those like Doe who owe fees for court-appointed counsel. Both groups owe attorney fees, yet those owing State court-appointed fees are unable to expunge their records. Doe has identified similarly situated groups that are treated differently.

2. *Disparate treatment versus disparate impact.* The State argues that no defendant can have a criminal record expunged unless all costs and fees are paid. For that reason, the State argues that Doe is challenging the disparate *impact* of the expungement statute, not disparate treatment. The State notes that other states have previously rejected Doe's argument. *See, e.g.*, *People v. Covington*, 98 Cal. Rptr. 2d 852, 858 (Ct. App. 2000) ("Equal protection means only that [the defendant] can have her conviction expunged, the same as the wealthier defendant in her hypothetical, if and when she pays restitution . . . ."); *State v. Hanes*, 79 P.3d 1070, 1070–72 (Idaho Ct. App. 2003) (rejecting equal protection challenge to statute that required compliance with terms of probation as a condition for expungement, and when defendant

repeatedly "failed to make timely payments for his restitution and costs of probation supervision"). Those cases, however, addressed outstanding restitution and costs of probation supervision, not court-appointed attorney fees.

Doe more narrowly alleges disparate *treatment*. Defendants represented by privately retained attorneys are eligible for expungement even if they have unpaid attorney fees, so long as all other court costs have been paid, while defendants like Doe are ineligible for expungement if they owe fees for court-appointed counsel. We conclude that Doe has adequately alleged disparate treatment.

3. *Rational basis review.* Under rational basis review, a statute "will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Dudley*, 766 N.W.2d at 615 (quoting *Sanchez v. State*, 692 N.W.2d 812, 817 (Iowa 2005)). "A classification is reasonable if it is 'based upon some apparent difference in situation or circumstances of the subjects placed within one class or the other which establishes the necessity or propriety of distinction between them.'" *Id.* (quoting *State v. Mann*, 602 N.W.2d 785, 792 (Iowa 1999)). Doe must prove that "the relationship between the classification and the purpose behind it is so weak the classification must be viewed as arbitrary or capricious." *King*, 818 N.W.2d at 28 (quoting *Ames Rental Prop. Ass'n v. City of Ames*, 736 N.W.2d 255, 259 (Iowa 2007)). Doe "must negate every reasonable basis upon which the classification may be sustained." *Id.* (quoting *Bierkamp v. Rogers*, 293 N.W.2d 577, 579–80 (Iowa 1980) (en banc)). "We will not declare something unconstitutional under the rational-basis test unless it 'clearly, palpably, and without doubt infringe[s] upon the constitution.'" *Residential & Agric. Advisory*

*Comm., LLC*, 888 N.W.2d at 50 (alteration in original) (quoting *Racing Ass'n of Cent. Iowa v. Fitzgerald* (*RACI*), 675 N.W.2d 1, 8 (Iowa 2004)).

"[A]lthough the rational basis standard of review is admittedly deferential to legislative judgment, 'it is not a toothless one' in Iowa." *RACI*, 675 N.W.2d at 9 (quoting *Mathews v. de Castro*, 429 U.S. 181, 185, 97 S. Ct. 431, 434 (1976)). We use a three-part analysis when reviewing challenges to a statute under article I, section 6 of the Iowa Constitution. *Residential & Agric. Advisory Comm., LLC*, 888 N.W.2d at 50. "First, we must determine whether there was a valid, 'realistically conceivable' purpose that served a legitimate government interest." *Id.* (quoting *McQuistion v. City of Clinton*, 872 N.W.2d 817, 831 (Iowa 2015)). "To be realistically conceivable, the [statute] cannot be 'so overinclusive and underinclusive as to be irrational.' " *Id.* (quoting *Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 459 (Iowa 2013)). "Next, the court must evaluate whether the 'reason has a basis in fact.' " *McQuistion*, 872 N.W.2d at 831 (quoting *RACI*, 675 N.W.2d at 7–8). "[A]lthough 'actual proof of an asserted justification [i]s not necessary, . . . the court w[ill] not simply accept it at face value and w[ill] examine it to determine whether it [i]s credible as opposed to specious.' " *LSCP, LLLP*, 861 N.W.2d at 860 (second, third, fourth, and fifth alterations in original) (quoting *Qwest Corp. v. Iowa State Bd. of Tax Review*, 829 N.W.2d 550, 560 (Iowa 2013)).

Doe argues that the State may not impose unduly harsh or discriminatory terms on indigent defendants merely because they owe attorney fees to the State instead of to a private attorney. Doe relies on *James v. Strange*, which invalidated a Kansas recoupment statute on rational basis review. 407 U.S. 128, 141–42, 92 S. Ct. 2027, 2035 (1972). The Kansas statute withheld various debtor's exemptions from

defendants owing court-appointed counsel fees, most notably, restrictions on wage garnishment available to other civil judgment debtors. *Id.* at 134–40, 92 S. Ct. 2031–34. The *James* Court recognized:

> The indigent's predicament under this statute comes into sharper focus when compared with that of one who has hired counsel in his defense. Should the latter prove unable to pay and a judgment be obtained against him, his obligation would become enforceable under the relevant provisions of the Kansas Code of Civil Procedure. But, unlike the indigent under the recoupment statute, the code's exemptions would protect this judgment debtor.

*Id.* at 136–37, 92 S. Ct. at 2032. The *James* Court concluded, "[T]o impose these harsh conditions on a class of debtors who were provided counsel as required by the Constitution is to practice . . . a discrimination which the Equal Protection Clause proscribes." *Id.* at 140–41, 92 S. Ct. at 2034. The Court noted, "[S]tate recoupment statutes may betoken legitimate state interests. But these interests are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors . . . ." *Id.* at 141, 92 S. Ct. at 2035.

By contrast, two years later in *Fuller v. Oregon*, the Supreme Court rejected an equal protection challenge to an Oregon recoupment statute that retained all exemptions available to judgment debtors and gave defendants the ability to show that having to repay legal defense costs would impose undue hardship. 417 U.S. 40, 53, 54, 94 S. Ct. 2116, 2124–25 (1974). The Supreme Court concluded,

> The Oregon statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work "manifest hardship" are forever exempt from any obligation to repay.

*Id.* at 53, 94 S. Ct. at 2124 (footnote omitted).[3]   The Oregon reimbursement statute survived constitutional challenge because the repayment obligations were conditioned on the defendant's reasonable ability to pay.   Neither *Fuller* nor *James* adjudicated a right to expungement; rather, both cases addressed constitutional challenges to the validity of the court debt.

In 2009, we addressed *James* and *Fuller* in a challenge to Iowa's recoupment statute.  *Dudley*, 766 N.W.2d at 614–15.  We determined that "[a] cost judgment may not be constitutionally imposed on a defendant unless a determination is first made that the defendant is or will be reasonably able to pay the judgment" for court-appointed attorney fees.  *Id.* at 615.  The legislature responded by codifying the reasonable-ability-to-pay requirement in an amendment to the recoupment statute. 2012 Iowa Acts ch. 1063, § 9 (codified at Iowa Code § 815.9 (2012).  The required showing of a reasonable ability to repay the court-appointed attorney fees avoids the constitutional infirmity identified in *James*.  *See Dudley*, 766 N.W.2d at 615; *see also State v. Albright*, ___ N.W.2d ___, ___ (Iowa 2019) ("The inclusion of the reasonable-ability-to-pay requirement makes these restitution provisions constitutional."); *cf. Thomas v. Haslam*, 329 F. Supp. 3d 475 (M.D. Tenn. 2018), *appeal docketed*, No. 18–5766 (6th Cir. July 27, 2018) (holding Tennessee statute revoking driver's licenses of indigent individuals for failure to timely pay court debt without inquiry into ability to pay violated the Equal Protection Clause).

---

[3]The Court also determined that the legislature could properly decline to impose repayment obligations on defendants who were acquitted, whose trials ended in dismissal or mistrial, or whose criminal convictions were reversed on appeal, and that the statute did not violate the defendant's right to counsel.  *Fuller*, 417 U.S. at 49–50, 53–54, 94 S. Ct. at 2123, 2125.

*Dudley* was decided several months before the district court assessed the $718 in costs to Doe in September 2009, when Doe was still represented by court-appointed counsel. Doe did not object then to the assessment of costs or appeal the cost judgment. Doe does not claim she can now vacate the cost judgment based on the lack of an affirmative showing of her reasonable ability to pay in 2009. *See State v. Olsen*, 794 N.W.2d 285, 289 (Iowa 2011) (holding court lacked jurisdiction to entertain motion to reduce court debt based on lack of ability-to-pay finding because motion was filed over thirty days after cost judgment became final). Doe makes clear she "has requested expungement of her criminal case, not forgiveness of the court-appointed attorney debt owed in that case. . . . Cancellation of debt is a different remedy, and something [she] has not requested."

Doe instead makes a facial challenge to Iowa Code section 901C.2 because the statute requires repayment of costs assessed for court-appointed attorney fees without requiring defendants to pay off privately retained attorney fees as a condition for expungement. We determine that section 901C.2 survives rational basis review under both the Iowa and Federal Constitutions. The legitimate State purpose here is to encourage payment of court debt. In *James*, the United States Supreme Court acknowledged the state's interest in recouping these costs:

> Many States . . . face expanding criminal dockets, and this Court has required appointed counsel for indigents in widening classes of cases and stages of prosecution. Such trends have heightened the burden on public revenues, and recoupment laws reflect legislative efforts to recover some of the added costs.

407 U.S. at 141, 92 S. Ct. at 2034–35 (footnotes omitted). As noted, the Iowa recoupment statute passes constitutional muster under *Fuller*, *Dudley*, and *Albright*.

Doe offers policy arguments favoring expungement, noting an arrest record may limit employment opportunities that could enable defendants to pay off the underlying court debt. An arrest record may also limit available housing, and offenders realistically need a place to live in order to land and keep a job. Steady employment reduces recidivism. "Our task, however, is not to weigh this statute's effectiveness but its constitutionality." *James*, 407 U.S. at 133, 92 S. Ct. at 2031. Doe's policy arguments should be directed to the legislature.

In *Judicial Branch,* we held it did not violate state or federal equal protection to allow expungement for persons receiving deferred judgments but not for those acquitted of criminal charges or whose criminal charges were dismissed. 800 N.W.2d at 579. Payment of court costs is typically a condition of a deferred judgment. We concluded that the legislature could rationally favor expungement for deferred judgments alone to incentivize payment of court costs. *Id.* The same incentive is in play here.

The legislature was not constitutionally required to allow expungement and could choose to condition expungement on payment of court debt to motivate defendants to pay what they owe the State. Further, had the legislature intended to allow courts to waive the requirement that court-appointed attorney fees be repaid prior to expungement based on a present inability to pay, it could have said so. Indeed, the legislature allowed waiver of another requirement, the 180-day waiting period in subsection 901C.2(1)(*a*)(3), upon a showing of good cause. *See Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 649 (Iowa 2013) ("[L]egislative intent is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so

mentioned."). We cannot rewrite the statute to allow waiver of court debt.

Other Iowa statutes impose consequences such as loss of licenses for failure to pay state debt or child support.[4] We hold the requirement to pay court costs found in Iowa Code section 901C.2, including for court-appointed attorney fees, is rationally related to the government interest in collecting court debt. We reject Doe's equal protection challenge under the United States and Iowa Constitutions.

## IV. Disposition.

For these reasons, we affirm the district court's ruling denying Doe's motion to expunge her record.

**AFFIRMED.**

Mansfield, Christensen, and McDonald, JJ., join this opinion; Wiggins, J., files a dissenting opinion in which Cady, C.J., joins; Appel, J., files a separate dissenting opinion.

---

[4]Other Iowa Code provisions provide consequences for individuals who have failed to pay certain costs. *See, e.g.*, Iowa Code ch. 252I (procedure for levying against accounts for failure to pay child support); ch. 252J (procedure for revoking licenses, including occupational, professional, business, and driver's licenses for failing to pay child support); §§ 261.121–.127 (licensing sanctions for failure to pay student loans/noncompliance with agreement for payment of obligation); ch. 272D (licensing sanctions for failure to pay debt to state or local government); § 321.210A (suspension of driver's license for failure to pay fine, penalty, surcharge, or court costs).

**WIGGINS, Justice (dissenting).**

I respectfully dissent. I would find that the requirements of Iowa Code section 901C.2(1)(*a*)(2) (2018) violate the equal protection clause under the Iowa Constitution as applied to Doe. Before I discuss why, I think it is important to discuss the facts of this case. On June 3, 2009, the State charged Doe with domestic abuse assault with a dangerous weapon (an aggravated misdemeanor) and assault on a peace officer (a serious misdemeanor) in a trial information docketed as AG228484. By a separate docket number, the State also charged Doe with interference with official acts. Due to her indigency, the court appointed Doe an attorney in AGR228484.

The State and Doe reached an agreement whereby Doe was required to complete a family violence services class and, upon successful completion, the State would dismiss the case. Nowhere in the record is there an agreement that the indigent Doe would pay costs, including unpaid court-appointed attorney fees. On September 15, the State filed a notice of intent not to prosecute. The judge signed off on it the same day. Handwritten in the notice by the county attorney was the following: "4. Costs to the Δ." Neither Doe nor her attorney signed off on the notice or the dismissal order. The dismissal order never indicated that costs included court-appointed attorney fees. The order never found that Doe as an indigent defendant had the reasonable ability to pay these fees. *See* Iowa Code § 910.2(1) (requiring the court to find a defendant had a reasonable ability to pay before assessing court-appointed attorney fees and costs). A defendant does not have the obligation to ask the district court to determine she had a present inability to pay the court debt. *State v. Albright*, ___ N.W.2d ___, ___ (Iowa 2019). Moreover,

because the State dismissed the case, the Code does not allow a defendant to ask the court to determine whether she had a present inability to pay the court debt. *See* Iowa Code § 910.7 (allowing an offender to petition the court regarding restitution only "during the period of probation, parole, or incarceration"). As the majority notes, the imposition of restitution for court-appointed attorney fees can avoid constitutional infirmity only by a court finding that the offender has the reasonable ability to pay the restitution ordered. *State v. Dudley*, 766 N.W.2d 606, 615 (Iowa 2009).

Thus, I would find the relevant groups to compare are all offenders and indigent offenders *who lack the reasonable ability to pay restitution.* Applying the rational basis analysis under the Iowa Constitution, we must determine whether the legislature had a valid reason to treat all offenders the same without differentiating indigent offenders who lack the reasonable ability to pay in its expungement statute. *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 7 (Iowa 2004). Second, we must decide whether the legislature's claimed reason has a basis in fact. *Id.* at 7–8. Lastly, "we must consider whether the relationship between the classification"—i.e., the differences between all offenders and indigent offenders who lack the reasonable ability to pay—"and the purpose of the classification is so weak that the classification must be viewed as arbitrary." *Id.* at 8.

I can find no valid reason to treat all offenders the same without differentiating indigent offenders who lack the reasonable ability to pay in the expungement statute. Offenders can be required to pay restitution only after a finding of reasonable ability to pay. Iowa Code § 910.2(1). If an offender who has a reasonable ability to pay decides not to pay these costs, the legislature can deny expungement because these offenders

consciously chose not to pay restitution. However, indigent offenders who lack the reasonable ability to pay do not have the ability to pay and, thus, will never be eligible for expungement. Therefore, I would find the classification is so weak that it is arbitrary and violates equal protection.

To solve this problem, I would remand the case back to the district court to determine if Doe has the reasonable ability to pay these costs. If not, I would remove them from the docket. If she does, I would agree with the majority that the statute does not violate equal protection under the Iowa Constitution.

Cady, C.J., joins this dissent.

**APPEL, Justice (dissenting).**

### I. Introduction.

In 2009, Jane Doe was indigent. The state charged her with two crimes. The district court appointed counsel because her income was "at or below 125% of guidelines" and she was "unable to pay an attorney." The charges were then dismissed. All that remains of the episode are a record of the dismissed charges, the burden on Doe's life created by that record, and attorney fees she owes to the state.

In the proceedings below, Doe moved to expunge the record of dismissed charges pursuant to Iowa Code section 901C.2 (2017). Recognizing that section 901C.2(1)(*a*)(2) prohibits expungement unless all court costs and fees are paid, she asserted that the prohibition is unconstitutional under the due process and equal protection provisions of the Federal and Iowa Constitutions. The district court denied the motion.

On appeal, she abandons the due process argument and presents a narrow constitutional question under the federal and state equal protection provisions. Can the legislature, in providing for expungement of criminal records, discriminate between (1) persons who owe money to privately-retained counsel and (2) persons who owe money to court-appointed counsel incurred because they were indigent?[5]

---

[5]Doe's briefing does not challenge Iowa Code section 901C.2(1)(*a*)(2) based on discrimination between those who are reasonably able to pay court debts, including attorney fees, and those who are not reasonably able to pay such debts or fees. When pressed on this point at oral argument, counsel for Doe confirmed that the distinction drawn by Doe is between people who owe fees to privately retained attorneys and those who owe fees to court-appointed attorneys. Like the majority, I do not resolve the issue unchallenged by Doe.

## II. **Rational Basis Review.**

The parties agree we should evaluate the challenge under rational basis review.[6] Our approach to rational basis review under the Iowa Constitution involves three steps: (1) identify the classes of similarly situated persons treated differently; (2) examine the legitimacy of the end to be achieved; and (3) consider the rationality of the means chosen by the legislature to achieve its desired end. *See LCSP, LLLP v. Kay-Decker*, 861 N.W.2d 846, 859–60 (Iowa 2015); *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 7–8 (Iowa 2004). Under federal law, we ask whether the classification drawn by the statute is rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 3254 (1985).

## III. **Discussion.**

**A. Similarly Situated Groups.** The two groups identified by Doe are similarly situated. In this respect, I agree with the majority. I also agree that the similarly situated groups are treated differently. Although both groups owe attorney fees, the debts only prevent the latter group from expungement.

**B. Legitimate End.** Is there a legitimate end for the requirement to pay court costs and fees before gaining entitlement to expungement? The majority suggests the legitimate purpose is to encourage payment of

---

[6]Doe does not argue that Iowa Code section 901C.2 should be evaluated under a level of scrutiny higher than rational basis on the grounds that it, for example, classifies based on poverty or socioeconomic class, *see, e.g.*, Danieli Evans Peterman, *Socioeconomic Status Discrimination*, 104 Va. L. Rev. 1283, 1287 n.10 (2018) (collecting authorities advocating for higher level of scrutiny to legislation burdening the poor), or burdens a fundamental right to counsel, *see, e.g.*, *Johnston v. Veterans' Plaza Auth.*, 535 N.W.2d 131, 132 (Iowa 1995) (explaining that the court reviews challenged statutes burdening a fundamental right under a higher level of scrutiny but that failure to raise argument on level of scrutiny in initial brief waives the argument). Consequently, like the majority, I evaluate her challenge under rational basis review.

court debt. I agree that encouraging payment of court debt is a legitimate goal. However, as explained below, I am not convinced that withholding expungement is a rational way to achieve that goal. Further, I do not think the classification drawn between similarly situated persons rationally serves that goal.

**C. Rationality of Means Chosen to Achieve Desired End.** The legislature has not chosen a rational means to achieve its desired end. The problem is twofold.

1. *General irrationality of withholding expungement to encourage repayment of court debt.* It seems obvious that withholding expungement until court debt is repaid is irrational and counterproductive where a person lacks a reasonable ability to pay the court debt. *See, e.g.,* *Thomas v. Haslam*, 329 F. Supp. 3d 475, 491 (M.D. Tenn. 2018), *appeal docketed*, No. 18–5766 (6th Cir. July 27, 2018) *see also State v. Collins*, No. 43168, 1981 WL 4990, at *2 (Ohio Ct. App. May 28, 1981) (explaining that it would be an equal protection violation to deny expungement, on the basis of outstanding court debt, to a person adjudged indigent at the time of the ruling on expungement). But it seems to me that Doe has not challenged section 901C.2(1)(*a*)(2) on the grounds that it discriminates against those *currently* lacking a reasonable ability to pay outstanding court debts, so I join the majority in reserving judgment on this question.

2. *Irrationality of classifying among those owing debts to private and court-appointed attorneys.* I now come to the heart of Doe's challenge. At the outset, the majority wrongly seems to believe the fact that there is no constitutional right to expungement is significant. The lack of a constitutional right might have a bearing on determining the level of scrutiny. But level of scrutiny is not an issue in this case. All

parties agree that we should apply a rational basis test. For rational basis review, it does not matter at all whether the interest involved is of constitutional dimension. We must decide if, in granting the *statutory right*, the legislature has drawn an unconstitutional line.

Many state and federal decisions establish that the legislature cannot grant *statutory rights* that irrationally discriminate against similarly situated persons. The right to appeal a criminal conviction provides a good example. "It is true that the right of appeal is purely statutory, not constitutional, and may be granted or denied by the legislature as it determines." *Shortridge v. State*, 478 N.W.2d 613, 615 (Iowa 1991) *superseded by statute on other grounds*, 1992 Iowa Acts ch. 1212, § 38 (codified at Iowa Code § 822.9 (1993)). But "once a right of appeal is provided '[i]t may not be extended to some and denied to others.'" *Id.* (alteration in original) (quoting *In re Chambers*, 152 N.W.2d 818, 820 (Iowa 1967)); *see also State v. Hinners*, 471 N.W.2d 841, 843 (Iowa 1991) ("[O]nce the right of appeal has been established, 'these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.'" (alteration in original) (quoting *Rinaldi v. Yeager*, 384 U.S. 305, 310, 86 S. Ct. 1497, 1500 (1966))). "When procedures enacted by the State serve to deny one person the right of appeal granted to another, equal protection of the law is denied." *Shortridge*, 478 N.W.2d at 615.

The same reasoning is found in federal decisions. The Federal Constitution, it is usually asserted, does not require states to provide appellate courts or a right to appellate review. *McKane v. Durston*, 153 U.S. 684, 687, 14 S. Ct. 913, 915 (1894). *Cf. Jones v. Barnes*, 463 U.S. 745, 756 n.1, 103 S. Ct. 3308, 3315 n.1 (1983) (Brennan, J., dissenting) (arguing that, were the question to squarely come before it, the Court

would reassess its prior decisions and decide that some form of review of criminal convictions is required). But if a state establishes a right of appeal, it cannot administer its appellate process in a discriminatory manner and still be consistent with the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S. Ct. 585, 590 (1956) (plurality opinion).

Here, the legislature has drawn a line between similarly situated groups that only fences out people whose indigence required court-appointed counsel. While anyone may owe attorney fees, it is only those whose poverty led to court-appointed counsel that can be denied expungement on the basis of the outstanding fees.

The key United States Supreme Court case on the issue before us is *James v. Strange*, 407 U.S. 128, 130, 92 S. Ct. 2027, 2029 (1972). In this case, the United States Supreme Court faced a statute that provided extra means to collect debt arising from appointment of counsel at state expense. *Id.* at 131, 92 S. Ct. at 2029–30. In the underlying criminal proceeding, the Kansas court appointed counsel to an indigent defendant pursuant to state law. *Id.* at 130, 92 S. Ct. at 2029. The defendant was obligated to repay to the state the amount expended. *Id.* If the debt went unpaid, a Kansas statute provided for a judgment to be docketed and for garnishment of wages or other methods of execution authorized by state civil procedure. *Id.* at 131, 92 S. Ct. at 2029–30. But unlike other judgment debtors, the person owing debt as a result of expenditures by court-appointed counsel was not allowed exemptions provided by the state civil procedure. *Id.* Thus, as the court explained,

> The indigent's predicament under this statute comes into sharper focus when compared with that of one who has hired counsel in his defense. Should the latter prove unable to pay and a judgment be obtained against him, his

obligation would become enforceable under the relevant provisions of the Kansas Code of Civil Procedure. But, unlike the indigent under the recoupment statute, the code's exemptions would protect this judgment debtor.

*Id.* at 136–37, 92 S. Ct. at 2032.

A unanimous Court struck down the Kansas statute as a violation of equal protection. *Id.* at 141–42, 92 S. Ct. at 2035. The elements of punitiveness and discrimination in the Kansas statute, the Court explained, violated the rights of citizens to equal treatment under the law. *Id.* In its decision, the *James* Court likened the case to *Rinaldi*, 384 U.S. at 308–09, 86 S. Ct. at 1499–1500. *James*, 407 U.S. at 140–41, 92 S. Ct. at 2034–35. In *Rinaldi*, a New Jersey statute required only indigent defendants sentenced to confinement in state institutions to reimburse the State for the costs of a transcript on appeal. 384 U.S. at 308, 86 S. Ct. at 1499. The *Rinaldi* Court held, "To fasten a financial burden only upon those unsuccessful appellants who are confined in state institutions . . . is to make an invidious discrimination." *Id.* at 309, 86 S. Ct. at 1500. Similarly, the *James* Court explained, "[T]o impose these harsh conditions on a class of debtors who were provided counsel as required by the Constitution is to practice . . . a discrimination which the Equal Protection Clause proscribes." 407 U.S. at 140–41, 92 S. Ct. at 2034.

To be sure, the *James* Court recognized the state's interest in recouping expenses but dismissed it as a rational reason for the discrimination. Kansas had advanced the same argument presented here by the majority: "The challenged statute is rationally related to the end of attempting to raise money to help defray the costs of providing appointed counsel." Brief of Appellant at 18, *James v. Strange*, 407 U.S. 128, 92 S. Ct 2027 (1972) (No. 71-11), 1972 WL 135745, at *18. While

"recogniz[ing] that state recoupment statutes may betoken legitimate state interests," the *James* Court explained that "these interests are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors." 407 U.S. at 141, 92 S. Ct. at 2035. Further, the Court said, "[s]tate recoupment laws, notwithstanding the state interests they may serve, need not blight in such discriminatory fashion the hopes of indigents for self-sufficiency and self-respect." *Id.* at 141–42, 92 S. Ct. at 2035. In addition, although the *James* Court acknowledged that a state's claim to reimbursement may take precedence over private debts in some circumstances, "[t]his does not mean . . . that a State may impose unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor." *Id.* at 138, 92 S. Ct. at 2033.

Other courts have reached similar results. For instance, in *State v. Williams*, 343 So. 2d 35, 37–38 (Fla. 1977), the court examined a statutory provision that provided for a perpetual lien on debts incurred as a result of court-appointed counsel. Debtors with other types of debts were afforded the benefit of a limitations period. *Id.* This was an equal protection violation, the court said, because "similarly situated persons, i.e., debtors, are not treated in a similar fashion since only the judgment debtors [with court-appointed attorney fee debts] are to be perpetually liable for the debts incurred under this statute." *Id.* at 38.

In *State v. Huth*, 334 N.W.2d 485, 489–90 (S.D. 1983), the court considered a portion of a criminal judgment and sentence revoking probation should the defendant discharge through bankruptcy an obligation to pay indigent counsel fees and costs of prosecution. Bankruptcy, of course, is a benefit that a state may, but need not, offer. *See United States v. Kras*, 409 U.S. 434, 446, 93 S. Ct. 631, 638 (1973)

("There is no constitutional right to obtain a discharge of one's debts in bankruptcy."). Yet the *Huth* court found an equal protection violation because "the portion of the judgment and sentence exposing appellant to revocation if he voluntarily discharges any legal obligation in bankruptcy unconstitutionally deprives appellant of rights and remedies afforded to other individuals." 334 N.W.2d at 490.

Iowa Code section 901C.2(1)(*a*)(2) fails scrutiny under the Equal Protection Clause of the Fourteenth Amendment under *James*, 407 U.S. at 141–42, 92 S. Ct. at 2035. And the reasoning in *James*, along with that in *Williams*, 343 So. 2d at 38 and *Huth*, 334 N.W.2d at 489–90, is persuasive in finding a violation of article I, section 6 of the Iowa Constitution. As in all three cases, the statutes involved discriminate between debts owed because of court-appointed counsel and debts owed to private counsel. The discrimination is harsh:

> [A] member of the general public—such as an employer doing an informal background check—could access our computerized docket and potentially draw inappropriate inferences from the mere presence of a criminal file relating to an individual, even though the criminal charges were dismissed or the individual was acquitted.

*State v. Doe*, 903 N.W.2d 347, 354 (Iowa 2017).

I would simply follow what I see are the dictates of *James*. Because section 901C.2(1)(*a*)(2) irrationally discriminates among similarly situated debtors, I would find it invalid as applied to the situation presented by Doe.[7]

---

[7]The majority says Doe is bringing a facial challenge. I disagree. "A facial challenge is one in which no application of the statute could be constitutional under any set of facts." *Honomichl v. Valley View Swine, LLC*, 914 N.W.2d 223, 231 (Iowa 2018). *But see Janklow v. Planned Parenthood, Sioux Falls Clinic*, 517 U.S. 1174, 1175, 116 S. Ct. 1582, 1583 (1996) (mem.) (Stevens, J.) (explaining that the "no set of circumstances" test is inconsistent with the standard for deciding facial challenges and with a wide array of legal principles). Doe takes issue with section 901C.2(1)(*a*)(2)

### III. Conclusion.

I would reverse the district court judgment. And because all parties agree that Doe meets the requirements for expungement except the unconstitutional provision in Iowa Code section 901C.2(1)(*a*)(2), I would remand with instructions to grant her motion for expungement.

---

insofar as it imposes a barrier to expungement for indigents who owe fees to court-appointed counsel but not for those who owe fees to private counsel. She does not allege that the provision is unconstitutional under all its applications. In fact, Doe distinguishes among the "court costs, fees, and other financial obligations" implicated by section 901C.2(1)(*a*)(2). For instance, she states, "Unlike court-appointed attorney fees, victim restitution can be owed by both indigent defendants and defendants able to retain counsel, and therefore does not raise the same equal protection implications."