# IN THE COURT OF APPEALS OF IOWA

No. 24-1640
Filed April 15, 2026

**David Michael Adcock,**
Plaintiff,

v.

**Iowa District Court for Polk County,**
Defendant.

Certiorari from the Iowa District Court for Polk County,
The Honorable Tabitha Turner, Judge.

**WRIT ANNULLED**

Arianna Nalani Eddy of Iowa Legal Aid, Cedar Rapids, attorney for
plaintiff.

Brenna Bird, Attorney General, David Banta, Assistant Attorney General,
attorneys for defendant.

Heard at oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Greer, P.J.

1

**GREER, Presiding Judge.**

In this certiorari action, David Adcock challenges the district court order refusing to discharge his court debt. According to Adcock, the court required him to pay indigent defense fee reimbursement (IDFR) from a twenty-four-year-old criminal case in which the charges were eventually dismissed, with costs to Adcock, including the IDFR and jail fees. Adcock claims the district court acted illegally by (1) failing to apply the twenty-year statute of limitations for actions on judgments in Iowa Code section 614.1(6) (2024) to the IDFR and (2) applying the sixty-five-year charge-off language in Iowa Code section 602.8107(5) to conclude he was still required to pay the debt. As a third challenge, Adcock argues applying the twenty-year statute of limitations for judgments is necessary to uphold the constitutionality of Iowa's defense-recoupment statute.[1]

The State's appellate position is that no statute of limitations applies to a judgment in favor of the State under the doctrine of *nullum tempus occurrit regi*, which translates to "no time runs against the King." *See Fennelly v. A-1 Mach. & Tool Co.*, 728 N.W.2d 163, 168 (Iowa 2006) (citation omitted). It argues that the doctrine applies to all citizens, and so there is no constitutional violation.

Accepting the State's position that a statute of limitations does not apply to the restitution judgment entered in favor of the State, we affirm. With that resolution, we reject Adcock's constitutional arguments because

---

[1] Adcock also argued that the district court did not have jurisdiction to assess any court debt without a conviction, but he withdrew this argument in supplemental briefing this court requested.

judgments in favor of the State are treated similarly for all citizens and, in any event, there is a rational basis for the treatment.

## I. Background Facts and Proceedings.

In March 2001, Adcock was charged with domestic abuse assault, enhanced, in violation of Iowa Code section 708.2A(2)(C) (2001). The same day the charges were filed, a no-contact order (NCO) was put in place between Adcock and the complaining party. Adcock applied for and received court-appointed counsel. In July, the district court held a jury trial, and Adcock was found guilty of domestic abuse assault causing bodily injury in case number AG154948 (first domestic assault). The same month, Adcock was charged with a second domestic abuse assault, case number AG157823. In September, Adcock was sentenced to eighteen months for violating the NCO under case number SM240456.

In October, there was a sentencing hearing for the first domestic assault. He was sentenced for domestic assault, which was enhanced because Adcock stipulated to a prior domestic assault conviction in another county, and for three violations of the NCO. For the first domestic assault conviction, he was sentenced to a period not to exceed two years and ordered to pay court costs, court-appointed counsel fees, and victim restitution. At the sentencing for the first domestic assault, Adcock stipulated to the minutes of testimony involving the second domestic assault. The court found him guilty and sentenced him to two years in prison to be served consecutively to the eighteen months of incarceration for the NCO violations.

In February 2002, the district court ordered Adcock to pay $1,580.59 in court costs and $158.06 in late fees. In September 2002, the State Public

Defender filed an indigent defense claim form assessing $352.50 for services rendered.

Adcock filed a pro se appeal related to the first domestic assault and requested court-appointed counsel, which the district court granted. On appeal, this court reversed Adcock's conviction and remanded the case due to ineffective assistance of counsel. *State v. Adcock*, No. 01-1637, 2002 WL 31528139, at *6 (Iowa Ct. App. Nov. 15, 2002). Adcock also appealed from the second domestic assault judgment and sentence, which our court resolved. *State v. Adcock*, No. 01-1638, 2002 WL 31641649, at *1 (Iowa Ct. App. Nov. 25, 2002). Our court affirmed Adcock's appeal of his conviction domestic abuse assault, enhanced, in violation of Iowa Code section 708.2A(3)(b), but vacated the sentence and remanded the case for resentencing. *Id.* at *2–3 (vacating the sentence and remanding because the district court failed to provide an explanation for why it imposed the sentence consecutively to the first domestic assault instead of concurrently).

In 2003, a resentencing hearing was held. Adcock and the State agreed that his first domestic assault case should be dismissed and that the sentence for his second domestic assault should run consecutively with his sentence for the NCO violation. At the hearing, the parties alluded to a discussion that occurred leading to the agreement, but it is not a part of this record for our review. The State filed notice of intent not to prosecute, and the district court dismissed the first domestic assault case without prejudice at cost to

Adcock.[2]  After the appeal, the appellate defender in this case reported spending twenty-one hours on the case, with fees totaling $945.[3]

**A.  State Begins Collecting Unpaid Restitution.**  In 2016, the Polk County Attorney's Office (PCAO) filed a praecipe for the unpaid amount of $2,895.30, which was designated as $2,658.49 in court costs, $211.81 for other costs, and an additional $25 garnishment fee.  The State sought garnishment of Adcock's wages, but the notice of garnishment served reflected a judgment of $2,947.80.  Ultimately, the court condemned the funds and ordered that any monies collected be paid to the clerk of court, but the garnishment notice sent to Adcock was returned as undeliverable.

Then, almost seven years later, in February 2024, the PCAO initiated garnishment again for the collection of court debt by filing a praecipe requesting $2,456.68, including court costs of $2,421.68 from Adcock's unpaid July 2001 judgment and a garnishment fee of $35.  The notice of garnishment reflected an additional cost for the sheriff's fee of $97.68.  The garnishee responded that Adcock earned an estimated $18,000 annually.  As a result, $893.29 of Adcock's wages were garnished.

**B.  Adcock Files Motions to Quash and Discharge the Fees.**  In June, Adcock moved to quash the garnishment and to discharge the IDFR and jail fees.  In July, Adcock and the State agreed that as to the $893.29 that the PCAO garnished, it would return $93.29 because under Iowa Code

---

[2] The intent not to prosecute includes the language "Per agreement on AG158732 that 18 months on violation run consecutive to 2 yrs prison" and the order of dismissal includes "at cost to [defendant]."

[3] On appeal, Adcock claims that the Iowa Courts Online record shows that he was charged a different amount than $352.50 and $945, but our review of the financial summary in AGCR154948 show he was charged the stated amounts.

section 642.21 (2024) the State could not garnish more than $800 annually based on Adcock's income. The district court ordered the $93.29 be returned to Adcock and issued the remaining money to the court. Then the clerk filed a notice of clerk offset under Iowa Code section 602.8103(6), and the clerk held onto the $93.29 because of outstanding money owed by Adcock for judgments in Polk and other counties. Adcock contested the offset. The court took the matter under advisement and invited briefing from both parties.

In August, the court held a hearing on the clerk offset, motion to quash, and motion to discharge. The district court identified the core questions as: "whether the court-appointed attorney's fees . . . should be discharged pursuant to Iowa Code [s]ection 614.1(6) under the theory of a twenty-year statute of limitations, or the fees should be enforced pursuant to Iowa Code [s]ection 602.8107 under the theory of either a sixty-five year statute of limitations or until the death of a person." Because both Adcock and the State agreed the district court should return the clerk offset to Adcock and that the jail fees for room and board should be discharged, the district court ordered the clerk to return the offset to Adcock and the State filed a satisfaction related to the sheriff's request for Adcock's jail room and board fees. But the State contested Adcock's two arguments that (1) the IDFR must be discharged because it was time-barred by the twenty-year statute of limitations under Iowa Code section 614.1(6) and (2) that if the twenty-year statute of limitations does not apply to the attorney's fees then "Iowa's court debt collection scheme is unconstitutional under *James v. Strange*, 407 U.S. 128 (1972) because it treats . . . Adcock more harshly, as an indigent defendant, than a person who owes attorney fees to a private attorney." At this stage, the State advocated that the judgment for fees

remained intact under Iowa Code section 602.8107, which it claimed provides a sixty-five-year statute of limitations for collection of a court debt.

The district court denied the motion to discharge the IDFR, finding the sixty-five-year charge-off period from Iowa Code section 602.8107 was controlling because the statute "specifically states that Court debt means restitution" including unpaid court-appointed attorney fees. Also, the district court also found Adcock failed to show that the sixty-five-year limitation period from section 602.1807 as applied was unconstitutional. The district court condemned the garnished funds.

Adcock petitioned for writ of certiorari. Our supreme court granted the petition, and the case was transferred to our court.

## II. Standard of Review.

"Our review of certiorari actions is generally for correction of errors at law." *K.C. v. Iowa Dist. Ct.*, 6 N.W.3d 297, 301 (Iowa 2024). Constitutional challenges to statutes are reviewed de novo. *State v. Doe*, 927 N.W.2d 656, 660 (Iowa 2019).

## III. Analysis.

In this certiorari action, Adcock challenges the district court order refusing to discharge court debt from over twenty years ago. According to Adcock, the court required him to pay an IDFR from a twenty-four-year-old criminal case in which the charges were eventually dismissed, with costs to Adcock, including the IDFR. To review, Adcock claims the district court acted illegally by (1) failing to apply the twenty-year statute of limitations for actions on judgments in Iowa Code section 614.1(6) to the IDFR and (2) applying the sixty-five-year charge-off language in Iowa Code

section 602.8107(5) to conclude he was still required to pay the debt. As a third challenge, Adcock raises an equal-protection argument under both the United States and Iowa Constitutions, arguing that the application of section 602.8107(5) treats indigent judgment debtors differently than ordinary judgment debtors. Thus, applying the twenty-year statute of limitations for judgments is necessary to uphold the constitutionality of Iowa's defense-recoupment statute.

Because we are reviewing a petition for writ of certiorari, we determine whether the court "has exceeded its jurisdiction or otherwise has acted illegally." *Christensen v. Iowa Dist. Ct.*, 21 N.W.3d 529, 531–32 (Iowa 2025) (cleaned up). "A court acts illegally when its factual findings are not supported by substantial evidence or when it has failed to properly apply the law." *Id.* at 532. After our review, we find the district court did not properly apply the law, even though it came to the correct result.

As noted, the State's appellate position is that no statute of limitations applies to a judgment in favor of the State and thus, no one got it right below. Asserting we are to follow supreme court precedent, the State contends we must affirm the judgment based upon the doctrine of *nullum tempus occurrit regi* which translates to "no time runs against the King." *See Fennelly*, 728 N.W.2d at 168 (finding the general statute of limitations did not apply to the county property tax obligation as "the sovereign [is] immune from the statute of limitations in order to preserve public rights"). However, before the district court, the State only took the position that Iowa Code section 602.8107(5) applied to impose a sixty-five-year statute of limitations to a judgment that involved court debt. The district court agreed with the State's position and denied Adcock's motion to discharge the debt.

As this case has progressed through the various stages of review, the arguments from both sides have meandered until oral argument, where the final positions finally landed. What complicates our work is that the district court did not have the same vantage point that we now have.

With different arguments made to the district court from those arguments made to our court, we normally would deem the argument waived by the party's failure to properly advance them. *See Christensen*, 21 N.W.3d at 532–35 (holding that the district court improperly interpreted a civil statute allowing for monetary sanctions to authorize the same sanctions in a criminal matter against the prosecutor after considering a foundational issue not argued below). But we see this case in a similar light as *Christensen* where our supreme court determined the "case presents an exceptional situation in which we deem it necessary to reach the unpreserved argument." *Id*. at 532. Our quest in this case is to not make "bad law." *Id*. ("For courts to proclaim a governing legal precedent based on an adverse party's concession on a point of law creates a significant risk of establishing a bad law, and all the more so when the concession is inferred solely based on the adverse party's failure to argue the point." (cleaned up)).

With that background in mind, we turn to the arguments about the application of a statute of limitations to the IDFR debt owed by Adcock and then address any remaining constitutional arguments.

**A. Statute of Limitations.** "Restitution is a creature of statute" and, as such, part of the "framework" is found in Iowa Code chapter 910. *State v. DeLong*, 943 N.W.2d 600, 604–05 (Iowa 2020). As developed in the record before us, Adcock owed IDFR restitution. We understand Adcock's argument that there are numerous references to treating a judgment for restitution as a civil matter, we just cannot go as far as he does. The language

related to treating the case as a civil, rather than criminal, action is nuanced, but in our view, directed to the civil remedies and enforcement, not to imposition of a civil statute of limitations. *See State v. Cooley*, No. 02-1448, 2003 WL 1530631, at *1 (Iowa Ct. App. Mar. 26, 2003) (noting that section 910.7 limits consideration of a restitution order to civil remedies); *see also* Iowa Code § 910.7A(2) ("A judgment of restitution *may* be enforced by the state . . . in the same manner as a civil judgment."(emphasis added)).

First, Adcock makes a compelling argument that if a claim for restitution results in a civil judgment, the statute of limitations found in Iowa Code section 614.1(6) should apply and even if the charge-off statute, Iowa Code section 602.8107, applies, the civil-judgment-collection remedies limit the action to the twenty-year statute of limitations period. While Adcock's position makes sense in the typical civil-judgment case, there is a distinction that the State urges.

To support its view, the State points to *Des Moines County v. Harker*, 34 Iowa 84, 85 (1871) and *Fennelly*, 728 N.W.2d at 168, for its position that "generally applicable civil statutes of limitations do not apply to governments" under the doctrine of *nullum tempus occurrit regi* (*nullum tempus*), meaning no time runs against the king—or the State in this case. *Nullum tempus* originates from English common law and remains a fixture in American common law. *Fennelly*, 728 N.W.2d at 168–69. Under this doctrine, a general statute of limitation does not apply to the State. *Id.* In *Fennelly*, a county treasurer brought an action for delinquent property taxes on machinery and equipment against a company taxpayer. *Id.* at 165–66. The taxpayer argued that because no specific statute of limitations provision was referenced in the code governing tax collection, the default statute of limitations applied, prohibiting the county from collecting taxes delinquent

10

for more than five years. *Id.* Our supreme court found that the five-year statute of limitations under section 614.1(4)—the default statute of limitations where no other limitation periods are stated—did not apply, reasoning that "it is well recognized that a statute of limitations does not run against the state unless specifically provided by statute." *Id.* at 169. And here, in our review, there is no statute that specifically provides a statute-of-limitations term for a claim involving a restitution judgment in favor of the State.

Yet, Adcock argues that Iowa Code section 910.7A waives the doctrine of *nullum tempus*. Specifically, Adcock claims that

> the use of the word "judgment" in the code applicable at that time means that . . . Adcock, like the State in [*State v. Hagen*, 840 N.W.2d 140 (Iowa 2013)], is subject to both the consequences and defenses in the enforcement of court debt as a civil judgment. *This includes the applicable statute of limitations*.

In *Hagen*, the State was able to assess judgment interest because the restitution was to be treated as a civil judgment under section 910.7A. 840 N.W.2d at 152–53.

But Adcock acknowledges that Iowa Code section 910.7A is silent about enforcing the statute of limitations for a restitution order. Facing that silence, he argues that waiving the statute of limitations against the State would create a situation where the State and private parties would have different enforcement timelines. But, because the statute does not specifically address whether the statute of limitations runs against the State, we will not assume that it does given the precedent that a general statute of limitations does not apply to the State of Iowa, "unless specifically provided by statute." *Fennelly*, 728 N.W.2d at 169–70 (citing cases involving the

limited treatment of statute of limitations in cases involving governmental entities).

Additionally, Adcock argues that the legislature's explicit exclusion of judgments in section 614.1(6) for "child support, spousal support, or a judgment of distribution of marital assets" from the twenty-year statute of limitations but not IDFR or any criminal case judgments indicates that the legislative intent was not to exclude those judgments from the general statute of limitations. But, as we have found that the general statute of limitations does not run against the State, this argument is immaterial.

Although this defense came late, we are not inclined to "follow [the] lead" of the district court to advance an incorrect application of a statute. *Christensen*, 21 N.W.3d at 532 (citation omitted). And incorporating a statute that allows a twenty-year civil statute of limitations against the State, where it was not specifically referenced, would work in favor of those defendants who are the most serious offenders. For example, if an individual's prison term exceeded twenty years, it is likely that collection would be impossible before the statute ran. To avoid a result that would stand in the way of our supreme court precedent, we affirm the district court's denial of the motion to discharge the judgment and annul the writ.[4] *See Bousman v Iowa Dist. Ct.*, 630 N.W.2d 789, 794 (Iowa 2001) (recognizing that one function of certiorari is the "avoidance of unnecessary litigation" (citation omitted)).

---

[4] Because we find that there is no applicable statute of limitations for restitution judgments in favor of the State, we do not address Adcock's argument that the district court improperly applied a "statute of limitations" from Iowa Code section 602.8107.

**B.  Constitutional Challenge.**[5]  On appeal, Adcock argues that if the civil twenty-year statute of limitations does not apply to the State, then there is a constitutional violation of equal protection principles for treating those owing IDFR to the State and those owing fees to a private attorney differently. "The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from denying to any person within its jurisdiction the equal protection of the laws." *State v. Dudley*, 766 N.W.2d 606, 615 (Iowa 2009) (cleaned up) (quoting *Sanchez v. State*, 692 N.W.2d 812, 817 (Iowa 2005)).  The Iowa constitution provides: "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6.

Adcock picks up the reasoning found in *State v. Williams*, a Florida case, establishing a violation of the Equal Protection Clause where the indigent debtor is perpetually liable for debts under its recoupment statute. 343 So.2d 35, 37–38 (Fla. 1977).  The State contends that the Iowa statute differs from the unconstitutional statute in *Williams* because the Florida statute withdrew a benefit from indigent defense debtors but not other debtors who owed the state money. *See id.* at 36–37.  The State asserts that not applying the twenty-year statute of limitations to indigent defendants who owe the State money does not result in discrimination because both restitution debtors and other civil debtors face the same consequences as to State obligations under Iowa law.  We do not find *Williams* to be persuasive

---

[5] One of Adcock's equal protection challenges hinges on the constitutionality of Iowa Code section 815.9 (2001).  Adcock failed to preserve error on this issue. "Constitutional issues . . . 'must be presented to and ruled upon by the district court in order to preserve error for appeal.'" *In re L.C.*, No. 24-1300, 2024 WL 4620793, at *1 (Iowa Ct. App. Oct. 30, 2024) (quoting *In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003)).

13

here. In sum, there is no statute of limitations applicable to *all citizens* in any case where they owe money to the State in a civil suit, thus, no equal-protection challenge can be sustained. But even if we examine and narrow the case as comparing defendants requiring court-appointed counsel against those with private-pay attorneys, Adcock has not established a violation of his right to equal protection under the United States or Iowa constitutions.

Claims of equal protection violations must include an allegation that similarly situated individuals are being treated differently. The State concedes that Adcock has made this allegation and that the two groups—indigent defendants and those defendants who can pay their counsel—are similarly situated. *Cf. Doe*, 927 N.W.2d at 662 (finding those who owe the State court-appointed attorney fees similarly situated to those who owe fees to a private attorney.). The remaining issue is whether this treatment passes rational basis review.

We review state laws on various levels of scrutiny based on the classification drawn and the rights implicated by the laws. Rational basis review is applied to statutes that "do[] not affect a fundamental right or classify on the basis of race, alienage, national origin, gender, or legitimacy." *Dudley*, 766 N.W.2d at 615.

"Under rational basis review, a statute, [or in this case the omission of a statute,] will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Doe*, 927 N.W.2d at 662–63 (cleaned up). "A classification is reasonable if it is based upon some apparent difference in situation or circumstances of the subjects placed within one class or the other which establishes the necessity or propriety of distinction between them." *Id.* at 663 (cleaned up). Adcock bears the burden of negating "any reasonably conceivable state of facts that could provide a rational basis

for the classification." *Sanchez*, 692 N.W.2d at 818 (citation omitted); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000) ("When conducting rational basis review we will not overturn such government action unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the government's actions were irrational." (cleaned up)).

Further, Adcock challenges the efficacy of the collection of IDFR to fund indigent defense. On equal-protection review we "decide whether constitutional lines were crossed," we do "not . . . sit as a superlegislature rethinking policy choices of the elected branches." *AFSCME Iowa Council 61 v. State*, 928 N.W.2d 21, 26 (Iowa 2019). We do not review the efficacy of the legislature's funding efforts for indigent defense. *See Doe*, 927 N.W.2d at 665 (noting the task "is not to weigh [a] statute's effectiveness but [to weigh] its constitutionality" (cleaned up)).

At the end, the district court found the State's legitimate interest was funding public defenders to protect defendants' Sixth Amendment rights. We agree with the district court's finding that the State has a legitimate interest in collecting court debt. *See id.* at 665–66. Specifically here, the State has a legitimate interest in preserving judgments for IDFR, just as it does with all citizens who owe the State money.

### IV. Conclusion.

The statute of limitations under Iowa Code section 614.1(6) does not apply, but instead the statute of limitations related to judgments against the State fall under the doctrine of *nullum tempus occurrit regi*. We find no equal

protection violation in the treatment of Adcock's restitution obligation. Thus, we annul the writ of certiorari.

**WRIT ANNULLED.**